Jason **BILLMAN**, Plaintiff–Appellant,

v.

**INDIANA DEPARTMENT OF CORRECTIONS, et al.,** Defendants–Appellees.

No. 94–2605.

United States Court of Appeals, Seventh Circuit.

Argued April 27, 1995.

Decided June 5, 1995.

Allen E. Shoenberger, Jean–Claude Mazzola, Law Student (argued), Loyola University School of Law, Chicago, IL, for plaintiff-appellant Jason Billman.

Linley E. Pearson, Atty. Gen., David L. Steiner (argued), Office of Atty. Gen., Indianapolis, IN, for defendant-appellee Indiana Dept. of Corrections.

David L. Steiner, Deputy Atty. Gen., Linley E. Pearson, Atty. Gen., Office of Atty. Gen., Indianapolis, IN, for defendants-appellees H. Christian Debruyn, Commission, Charles B. Miller, Superintendent, Mr. Love, Unit Team Manager, Unknown Correctional Officers.

Before POSNER, Chief Judge, and CUMMINGS and BAUER, Circuit Judges.

POSNER, Chief Judge.

■ Jason Billman, an inmate of an Indiana state prison, attempted to bring suit under 42 U.S.C. § 1983 against the prison system, prison officials, and guards, seeking damages for the infliction upon him of cruel and unusual punishment in violation of the Eighth Amendment, the principles of which have been held to bind the states by virtue of the due process clause of the Fourteenth Amendment. He asked for leave to file his complaint in forma pauperis. The district court denied leave, and dismissed the suit with prejudice, on the ground that the suit was frivolous. 28 U.S.C. § 1915(d). This ruling was, at the very least, a technical error. As the Supreme Court pointed out in *Denton v. Hernandez,* 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992), all that section 1915(d) authorizes the district court to do if it determines that the suit is frivolous is to deny leave to proceed in forma pauperis. The plaintiff can then try to scrape together the funds required for filing a paid suit, and if he succeeds, and refiles the suit, the question of dismissal on the pleadings will be evaluated under Rule 12 of the Federal Rules of Civil Procedure.

■ The judge's error was substantial and not merely technical if the suit was not frivolous; and although the Supreme Court has ruled that the standard of appellate review of a determination of frivolousness under 28 U.S.C. § 1915(d) is the deferential "abuse of discretion" standard, *Denton v. Hernandez, supra,* 504 U.S. at 34, 112 S.Ct. at 1734, this cannot be understood entirely literally. En route to determining that a claim is frivolous, the district court must determine whether it is legally insufficient, an issue purely of law on which appellate review is plenary. See, e.g., *Johnson v. Rodriguez,* 943 F.2d 104, 107 (1st Cir.1991); cf. *Pullman–Standard v. Swint,* 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982). Where discretion in a meaningful sense enters is where—and this is also involved in this case—the district court, having decided that the complaint is legally insufficient, also decides that the suit is so hopeless that the plaintiff should be prevented from trying to save it by amending the complaint. *Denton v. Hernan-*

*dez, supra,* 504 U.S. at 31–35, 112 S.Ct. at 1733–34; *DeTomaso v. McGinnis,* 970 F.2d 211, 213–14 (7th Cir.1992); *Smith–Bey v. Hospital Administrator,* 841 F.2d 751, 758 (7th Cir.1988). For that is the practical effect of denying leave to file suit in forma pauperis, unless the plaintiff can find the money to file a paid suit.

The complaint, drafted by inmate Billman without assistance of counsel, lists five defendants. One is the Indiana Department of Corrections. Three are named individuals; they are the head of that department, the warden of Billman's prison, and a "unit team manager" in the prison. The fifth defendant is an "unknown correctional complex officer." The complaint alleges that Billman was raped by his cellmate, Darrell Crabtree; that "prison officials and guards did not properly protect ... Billman even though they knew from prior conduct of Darrell Crabtree of his propensity to rape other inmates"; at no time did they tell Billman "about his roommates [i.e., about Crabtree's] prior conduct [in] raping other inmates at other prisons"; they did nothing "to help Billman when [the rape] was going on inside the cell house"; having been told after the rape that "he had to take a[n] AIDS test because Crabtree had been diagnosed as having the AIDS virus and Billman may have contracted the virus from Crabtree, ... Billman has to live with [being] test[ed] every 90 days to see if the virus has been transmitted to the victim"; "Billman has had to go to a psychological group because of the rape and the fear of having AIDS virus"; and "the prison officials did a report on Crabtree and found he had did this to Billman [i.e., raped him] and they did nothing but transfer Crabtree to another prison." The complaint seeks compensatory and punitive damages.

The complaint is the entire record of the case and we must therefore assume that the facts alleged in it—which are in no wise fantastic or unbelievable—are true. Fairly construed, with proper allowance for the fact that Billman is not a lawyer, the complaint alleges that employees of the prison system, knowing that Crabtree had a history of raping his cellmates and was HIV-positive, nevertheless placed Billman in the same cell without warning him of the danger he faced, and that they did nothing to interrupt the rape while it was in progress. We take it that Billman did not contract HIV. He would know by now (in fact within no more than six months after the rape), since he was being continually tested. But the fear caused by the rape itself, and the additional fear of contracting HIV until that fear was finally dispelled, would be normal items of damages, certainly in a case such as this of actual rather than merely feared exposure. *Marchica v. Long Island R.R.,* 31 F.3d 1197, 1204–06 (2d Cir.1994); *Cotita v. Pharma-Plast, U.S.A., Inc.,* 974 F.2d 598, 599 (5th Cir.1992); *Nesom v. Tri Hawk International,* 985 F.2d 208, 210 (5th Cir.1993).

Prison employees who act with deliberate indifference to the inmates' safety violate the Eighth Amendment. But to be guilty of "deliberate indifference" they must know they are creating a substantial risk of bodily harm. If they place a prisoner in a cell that has a cobra, but they do not know that there is a cobra there (or even that there is a high probability that there is a cobra there), they are not guilty of deliberate indifference even if they should have known about the risk, that is, even if they were negligent—even grossly negligent or even reckless in the tort sense—in failing to know. *Bowers v. DeVito,* 686 F.2d 616, 618 (7th Cir.1982). But if they know that there is a cobra there or at least that there is a high probability of a cobra there, and do nothing, that is deliberate indifference. *Farmer v. Brennan,* — U.S. —, —, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994); *Miller v. Neathery,* 52 F.3d 634, 638 (7th Cir.1995). The district court dismissed Billman's suit because he did not allege the requisite state of mind of each, or for that matter any, of the defendants. (The *individual* defendants. The Department of Corrections is immune from suit by virtue of the Eleventh Amendment.) It is no doubt true that if the official who assigns inmates to cells knew that Crabtree had a propensity to rape his cellmates and was HIV-positive, his assigning Billman to the same cell without, at the least, warning Billman and, perhaps, without then giving him a chance to reject the assignment would be deliberate indifference for the conse-

quences of which—the fear and humiliation inflicted by the rape and the fear of contracting the AIDS virus (and therefore eventually AIDS) from it—he would be liable to Billman in damages. But Billman does not allege, not directly anyway, that any official, and specifically any of the defendants, knowing all these things, was responsible for his cell assignment.

■■■ Ordinarily a tort victim who does not know who the tortfeasor is cannot sue. To know that one has been injured tortiously but not by whom is a ground for tolling the statute of limitations, *Singletary v. Continental Illinois National Bank & Trust Co.,* 9 F.3d 1236, 1241 (7th Cir.1993), but it is not a ground for filing suit before the plaintiff knows who injured him and who therefore should be named as the defendants. But this is not an ordinary case. Billman is a prison inmate. His opportunities for conducting a precomplaint inquiry are, we assume, virtually nil. The state's attorney smiled when we asked him at argument whether Billman would be given the run of the prison to investigate the culpability of prison employees for the rape. Even without doing any investigating, Billman knew enough to know that a terrible thing had been done to him. But he did not know enough to identify the culprits or to determine whether they had the confluence of knowledge (of Crabtree's propensity for rape and HIV status) and power (to assign Billman to a cell) necessary to hold them liable for inflicting a cruel and unusual punishment.

■■■ We do not think that the children's game of pin the tail on the donkey is a proper model for constitutional tort law. If a prisoner makes allegations that if true indicate a significant likelihood that someone employed by the prison system has inflicted cruel and unusual punishment on him, and if the circumstances are such as to make it infeasible for the prisoner to identify that someone before filing his complaint, his suit should not be dismissed as frivolous. *Duncan v. Duckworth,* 644 F.2d 653 (7th Cir. 1981); *Wellman v. Faulkner,* 715 F.2d 269, 276 (7th Cir.1983); *Chavis v. Rowe,* 643 F.2d 1281, 1290 n. 9 (7th Cir.1981); *Maclin v. Paulson,* 627 F.2d 83, 87–88 (7th Cir.1980);

*Munz v. Parr,* 758 F.2d 1254, 1257 (8th Cir. 1985). The principle is not limited to prisoner cases. It applies to any case in which, usually because the plaintiff has been injured as the consequence of the actions of an unknown member of a collective body, identification of the responsible party may be impossible without pretrial discovery. *Palmer v. Board of Education,* 46 F.3d 682, 688 (7th Cir.1995); *Hessel v. O'Hearn,* 977 F.2d 299, 305 (7th Cir.1992); cf. *Ybarra v. Spangard,* 25 Cal.2d 486, 154 P.2d 687 (1944). The principle is implicit in the many cases, most famously *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 390 n. 2, 91 S.Ct. 1999, 2001 n. 2, 29 L.Ed.2d 619 (1971), that take for granted the right of a plaintiff to sue unknown injurers. Of course, eventually the plaintiff must discover the names of the defendants in order to serve summonses on them and thus establish the court's personal jurisdiction, without which the suit must be dismissed. But his initial inability to identify the injurers is not by itself a proper ground for the dismissal of the suit. Dismissal would gratuitously prevent him from using the tools of pretrial discovery to discover the defendants' identity.

Our point is not that Billman should be given a break because he lacks legal skills. *Houston v. Lack,* 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988); *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam). Or that his complaint should, like any complaint governed by the Federal Rules of Civil Procedure, be read generously. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Orthmann v. Apple River Campground, Inc.,* 757 F.2d 909, 915 (7th Cir.1985). No plausible reading, however generous, would supply the missing link that we have identified. Our point is that because Billman is a prisoner he may not be in a position to identify the proper defendants, or all of them, in his complaint. If he were not a prisoner, yet could not reasonably be expected to identify the wrongdoers without the aid of pretrial discovery, his suit would not be dismissed. *Palmer v. Board of Education, supra,* 46 F.3d at 688. The peculiar

perversity of imposing heightened pleading standards in prisoner cases—a course of highly doubtful propriety after *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* —— U.S. ——, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)—is that it is far more difficult for a prisoner to write a detailed complaint than for a free person to do so, and again this is not because the prisoner does not know the law but because he is not able to investigate before filing suit. We think it is the duty of the district court to assist him, within reason, to make the necessary investigation.

How might this duty be discharged? One possibility is for the judge to request a lawyer, pursuant to 28 U.S.C. § 1915(d), to represent the prisoner for the limited purpose of determining whether the complaint can be amended to name as defendant anyone who there is reason to believe inflicted an actionable wrong on the plaintiff. The argument for this course is that it would be unrealistic to suppose that many prisoners could, by dangling the lure of a contingent fee or an award of damages under 42 U.S.C. § 1988, entice a lawyer to conduct the necessary investigation before the filing of a complaint (lawyers are, and with reason, terribly skeptical about the merits of prisoners' civil rights suits, most of which are indeed hoked up and frivolous, and prisons generally are located far from cities having large numbers of lawyers). The lawyer can conduct the necessary inquiry before the original named defendants are put to the bother of responding to the complaint. *Tabron v. Grace,* 6 F.3d 147, 156–57 (3d Cir.1993); *Bienvenu v. Beauregard Parish Police Jury,* 705 F.2d 1457, 1461 n. 2 (5th Cir.1983) (per curiam).

Alternatively, the judge may decide, before requesting a lawyer to assist the plaintiff, that the plaintiff make efforts on his own to obtain counsel. *Jackson v. County of McLean,* 953 F.2d 1070, 1072–73 (7th Cir.1992); *Farmer v. Haas,* 990 F.2d 319, 321 (7th Cir.1993). If his case is both substantial in money terms *and* has substantial merit, the plaintiff will have a fair shot at obtaining counsel and if he fails this may indicate that the case has no merit after all.

We do not want to straitjacket our district judges. But we do not think it an adequate discharge of judicial duties to turn away a prisoner because confinement has prevented him from preparing what may well be a meritorious complaint.

■ Our discussion to this point has mainly concerned Billman's cell assignment. There is the further claim that guards failed to stop the rape. Exactly what is meant is unclear. Of course to be liable under the standard of *Farmer v. Brennan* the guards would have had to be more than negligent—would, for example, have had to watch the rape in progress yet have done nothing to stop it though in a position to do so. Since such a scenario would be consistent with, though it is not a necessary inference from, the complaint, we must decide the question whether the complaint states a claim as if the hypothetical facts had been explicitly alleged. *Sanjuan v. American Board of Psychiatry & Neurology, Inc.,* 40 F.3d 247, 251 (7th Cir. 1994); *American Inter–Fidelity Exchange v. American Re–Insurance Co.,* 17 F.3d 1018, 1022 (7th Cir.1994); *Orthmann v. Apple River Campground, Inc., supra,* 757 F.2d at 915. Even so, prisoners normally know the names of the guards in their cell block, and the only named defendant even remotely likely to have stood by in this way is the "unknown correctional complex officer." The absence of names creates justifiable skepticism concerning this claim, but for the reasons previously set forth a determination of frivolousness would be premature when the plaintiff has been given no chance to explain why he cannot (if he cannot) identify the guilty guards. Anyway the judge dismissed the entire complaint with prejudice, forever barring Billman from pressing what for all that appears may be a highly meritorious case, if only he can penetrate the bureaucratic maze and discover who assigned him to Crabtree's cell and what that official knew.

The judgment is affirmed insofar as it dismissed as a defendant the Department of Corrections, which as we said is immune. But it is reversed with instructions to reinstate Billman's suit against the other defendants and to proceed in conformity with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.