107 F.3d 873
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Rudolph LUCIEN, Plaintiff-Appellant,
v.
Howard A. PETERS III, et al., Defendants-Appellees.
 No. 95-2778.
 United States Court of Appeals, Seventh Circuit.
 Submitted Dec. 17, 1996.[1]
Decided Feb. 6, 1997.
 
 Before MANION, ROVNER and DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 Plaintiff Rudolph Lucien, an Illinois state prisoner at Menard Correctional Center, filed a civil rights action, pursuant to 42 U.S.C. § 1983, against various prison officials[2] challenging various conditions and policies at Menard, under the Fourteenth and Eighth Amendments. The district court[3] dismissed three claims for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6) (prison overcrowding, excessive noise, and gang control), and the court entered summary judgment in favor of defendants as to the two remaining claims (racial discrimination in cell assignments, and exposure to environmental tobacco smoke).[4]
 
 Standard of Review
 
 2
 We review a dismissal under Rule 12(b)(6) de novo, Caldwell v. City of Elwood, 959 F.2d 670, 671 (7th Cir.1992), viewing all facts alleged in the complaint, as well as any inferences reasonably drawn from them, in a light most favorable to the plaintiff. McNeil v. Lane, 16 F.3d 123, 124 (7th Cir.1994). The claim may be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). We review an order granting summary judgment de novo, and ask whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show the existence of a genuine issue of material fact. Fed.R.Civ.P. 56(c). Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).
 
 Prison Overcrowding
 
 3
 In regard to any claim of overcrowding, we find the allegations woefully inadequate.[5] The complaint makes a reference to "double bunking" but only in the context of assigning smokers and non-smokers to the same cell. There is nothing else in the complaint[6] to even indicate that overcrowding is a claim in this case.
 
 Excessive Noise
 
 4
 The complaint alleges that defendants violate the "rights of all inmates" at Menard by "allowing intolerable noise levels generated by misuse and abuse of audio/visual equipment by inmates and the failure of the defendants to enforce their own rules prohibiting such conditions of confinement." This noise level occurs "at all times of the day and night." The district court dismissed the excessive noise claim pursuant to Rule 12(b)(6), and explained his reasoning:
 
 
 5
 The court has serious doubts whether tolerable noise levels are constitutionally required as a necessity of life.
 
 
 6
 The magistrate judge also stated that plaintiff had failed to "plead that he sustained any type of injury as a result of the alleged noise levels." At most, the noise "may have caused plaintiff some discomfort," which is not enough to state a constitutional claim.
 
 
 7
 We disagree with the district court. It is possible to state an 8th Amendment claim based on excessive noise. See, e.g., Antonelli v. Sheahan, 81 F.3d 1422, 1433 (7th Cir.1996). Under Farmer v. Brennan, 114 S.Ct. 1970, 1977 (1994), the complained-of deprivation must include an objective and "sufficiently serious" medical deprivation; and under the subjective prong there must be a showing of "sufficiently culpable state of mind." Id. Allegations of excessive noise can support the objective element of an Eighth Amendment claim. Kost v. Kozakiewicz, 1 F.3d 176 180 (3d Cir.1993) ( section 1983 challenge to conditions of confinement, including allegations of unbearable noise pollution causing inmates to suffer degenerative hearing, should not have been dismissed on ground that issues were addressed in context of previous class action suit); Inmates of Occoquan v. Barry, 844 F.2d 828, 848 (D.C.Cir.1988) (excessive noise caused by unregulated television volume settings constituted a constitutional violation only in combination with numerous other systemic deficiencies; proper to base holding on testimony that it was "necessary to almost shout to be heard"); Williams v. Boles, 841 F.2d 181, 183 (7th Cir.1988) (incessant noise may cause agony even though it leaves no physical marks); Toussaint v. McCarthy, 801 F.2d 1080, 1110 (9th Cir.1986) (affirming scope of relief granted by district court for noise level in the prison; evidence showed that there was a "constant level of noise" which adversely affected the inmates' hearing).
 
 
 8
 We hold that Lucien's allegations are sufficient to state an 8th Amendment excessive noise claim. We must remember that allegations contained in a pro se complaint are held to less stringent standards than formal pleadings drafted by lawyers, and thus must be liberally construed. Antonelli v. Sheahan, 81 F.3d 1422 1427 (7th Cir.1996). We also must consider the "perversity of imposing heightened pleading standards in prisoner cases--a course of highly doubtful propriety after Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 113 S.Ct. 1160 (1993)." Billman v. Indiana Department of Corrections, 56 F.3d 785, 790 (7th Cir.1995).
 
 
 9
 Moreover, while the parties submitted affidavits containing statements regarding noise levels, and an evidentiary hearing was held on the question of whether a preliminary injunction should issue on the noise claim, the district court apparently did not consider anything but the complaint's allegations in granting defendants' motions to dismiss this claim pursuant to Rule 12(b)(6). Because we are remanding, the district court may decide to convert the motion for dismissal into a summary judgment motion. See Venture Associates Corp. v. Zenith Data Systems Corp., 987 F.2d 429, 431 (7th Cir.1993) (Fed.R.Civ.P. 12(b) is mandatory; if materials before the district court are outside the complaint and not excluded, the court must convert the motion for dismissal into a summary judgment motion).
 
 Gang Control
 
 10
 The allegations in the complaint state that defendants permit a "reign of terror" to exist "relative to gang violence and illicit drug distribution by gangs," and administer Menard "so as to facilitate the continuous, widespread presence of gangs and repeated acts of violence by gang members against other inmates." Defendants achieve this by "allowing gangs of inmates to openly wear clothing items not sold at the prison of their particular gang colors; failing to enforce rules regarding noise from radios at all times of the day and night; failing to properly control and provide observation for many areas ..., and granting gang leaders special favors ... as a bargaining chip to be exchanged for the cooperation of gang leaders."
 
 
 11
 The district court dismissed the gang control claim under Rule 12(b)(6), after finding that plaintiff failed to allege "that he has been threatened or bothered in any way by any gang members" at Menard. Cf. Walsh v. Brewer, 733 F.2d 473, 476 (7th Cir.1984) ("risks to an inmate's safety alone may violate his rights when the threats are so constant that a virtual "reign of terror' exists"). Gang activity is a horrific reality in many prisons, including Menard. The level of gang activity alleged by Lucien comes close to satisfying Rule 12(b)(6) standards. At a minimum, he should be permitted to amend his complaint to satisfy the objections raised by the district court. If he chooses to amend his complaint, Lucien must, of course, sufficiently allege a serious risk to his safety as a result of gang presence at Menard Correctional Center. The parties submitted affidavits attesting to facts about gangs at Menard, but it is not clear that the district court considered matters outside the complaint and answer when it entered the Rule 12(b)(6) dismissal. As with the excessive noise claim, the district court on remand may find it necessary to transform defendants' motions to dismiss into motions for summary judgment.
 
 Racial Discrimination in Cell Assignments
 
 12
 Lucien, who is black, alleged that defendants make cell assignments according to inmates' race and gang membership. "Defendants are operating a practice of routinely assigning black inmates to cells with other black inmates, white inmates to cells with other white inmates, gang-affiliated inmates to cells with other gang-affiliated inmates, and of permitting inmates to choose their cellmates on a purely racial basis or basis of gang-affiliation."
 
 
 13
 The district court found that the allegations were sufficient to state an equal protection claim under the 14th Amendment, and let the claim proceed to the summary judgment stage. In support of his motion for summary judgment, Lucien presented the affidavit of a white inmate stating he had never had a black cellmate; and affidavits of black inmates who had always been housed with other blacks; and the affidavit of a Hispanic inmate stating he had never been assigned to a cell with a black inmate.
 
 
 14
 Defendants submitted prison records and a chart showing that Lucien has been housed with blacks, whites, and Hispanics. (Lucien alleged the contrary, but provided no evidentiary materials to counter defendants' records.) Hinsley stated that the population at Menard was 65% black, 25% white; and 10% other races. Welborn, Hinsley and Page all submitted affidavits saying that cell assignments were not made on the basis of race or gang affiliation. The Placement Officer Supervisor and other prison officials submitted affidavits saying that assignments were made based on inmate compatibility and safety and security.
 
 
 15
 The district court entered summary judgment in favor of defendants Welborn and Page on this issue on the basis that these defendants, as wardens, only had "control over prison policy in general, [but] there is no evidence that either of them were personally involved in or aware of any practice of racial discrimination." Also, the court found that Welborn and Page had no "direct responsibility for assigning the plaintiff to particular cells at Menard." We agree that plaintiff failed to show that these officials were aware of or implementing racial criteria for making cell assignments. See Billman v. Indiana Department of Corrections, 56 F.3d 785, 788-89 (7th Cir.1995).
 
 
 16
 As to defendant Hinsley, who was then the unit manager, the district court found that plaintiff did make two requests for cell changes, but it was "because his cellmate was a smoker, not because of his race." The magistrate judge noted that Lucien had submitted affidavits establishing that certain "employees at Menard made comments about race and cell assignments, [but] those comments were not made by any of the named defendants." We find nothing in the record creating material factual disputes on these issues.
 
 Environmental Tobacco Smoke
 
 17
 The complaint alleges that Lucien has been exposed to environmental tobacco smoke (ETS), and that defendant routinely assigned smokers and non-smokers to be cellmates. Specifically, Lucien claims that he was housed with several "heavy smokers." The district court found that the allegations were sufficient to state an Eighth Amendment claim, and permitted the claim to proceed to the summary judgment stage. An affidavit by Lucien states that the smoke "causes my throat and chest to burn severely; it causes me to become dizzy; and it causes my nose to run." Lucien also submitted affidavits by himself and other inmates about time spent with smoking cellmates, the presence of excessive smoke in cells surrounding the non-smoker's cell; and excessive smoke in common areas, e.g., a hallway leading to dining room, and an area leading to the commissary.
 
 
 18
 In support of their cross-motion for summary judgment on the ETS issue, defendants submitted documents showing that in the years Lucien has spent at Menard (at that time, about 90 weeks), he had spent a total of 10 weeks with a smoking cellmate, Archie Smith, in late 1992 and early 1993, and in September 1994, one week housed with Lynell Porter. Defendants also submitted a statement of their policy, put into effect in July 1994, against housing smokers and non-smokers together, giving non-smokers preference for non-smoking housing assignments, and setting aside three non-smoking cells in each block. Prior to July 1994, smoking was considered a housing issue only if a doctor ordered the inmate to be kept away from smokers. Defendant Hinsley also submitted an affidavit stating that plaintiff's medical file contains no restrictions prohibiting him from being housed with a smoker.
 
 
 19
 Allegations of harm caused by ETS can satisfy the objective prong of an 8th Amendment claim. Helling v. McKinney, 113 S.Ct. 2475 (1993). But the district court entered summary judgment in favor of defendants on the ETS issue on the basis that Lucien showed no medical need to be apart from smoke-filled areas. Plaintiff insists that he would have submitted his medical records if defendants had responded to his discovery requests. While there were some discovery disputes during the proceedings, we have found nothing in the record indicating that Lucien requested his medical records.
 
 
 20
 We agree with the district court that summary judgment in favor of defendants is appropriate as to the ETS claim. Plaintiff has failed to show even a dispute about any medical condition. Goffman v. Gross, 59 F.3d 668, 672 (7th Cir.1995) (no medical reports or other objective documents to support view that inmate who lost a lung due to cancer was at any particular danger from second-hand smoke; testimony of four inmates who had observed plaintiff having breathing difficulties and becoming ill when exposed to smoke was insufficient). Cf. Oliver v. Deen, 77 F.3d 156, 159-60 (7th Cir.1996).
 
 
 21
 Moreover, Lucien has not shown that defendants consciously decided to place him, or keep him, in a smoke-filled environment, either through the general implementation of the prison's policy, or in the specific cell assignments of Lucien and his various cellmates. The subjective prong of an Eighth Amendment claim requires that the defendant official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn ... and he must also draw the inference." Farmer, 114 S.Ct. at 1979. Here, the record contains numerous examples of defendants making every effort to enforce the no-smoking policy in common areas, such as the commissary, and to keep Lucien assigned to non-smoking cells with non-smoking cellmates. For example, in a March 1995 "grievance follow-up" sent to Lucien, the Department stated that "Lucien is correct in his complaints about the smoking in the Inmate Commissary," and declared that "correct[ive] action will be implemented."
 
 Conclusion
 
 22
 For the reasons stated, we AFFIRM in part, REVERSE in part, and REMAND to the district court for further proceedings as to the excessive noise and gang-related claims.
 
 
 
 [1]
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and record. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 [2]
 Defendant Peters is Director of the Illinois Department of Corrections; George C. Welborn was warden at Menard from February 1990 to January 1994; Thomas Page was assistant warden, and then warden during the relevant time period; and Charles L. Hinsley was the Unit Manager until January 1994, and then the assistant warden
 
 
 [3]
 The parties consented to entry of final judgment by a magistrate judge. 28 U.S.C. 636(c)
 
 
 [4]
 Lucien stated before the district court that all claims were brought against defendant in their individual capacities only. Regardless, the court dismissed all claims which might be construed as official capacity claims, pursuant to defendants' immunity from such claims under the 11th Amendment
 
 
 [5]
 The district court dismissed the overcrowding claim on the basis that the allegations were inadequate to state an 8th Amendment violation. "The complaint does not contain any facts as to how the alleged overcrowding injured the physical and mental health of the inmates or what type of injuries were incurred." Also, the complaint "completely fails to allege any type of injury by plaintiff as a result of the alleged overcrowding." And the complaint "does not even suggest that the defendants sought to intentionally harm plaintiff."
 
 
 [6]
 Plaintiff does attach an affidavit to his motion to reconsider the 12(b)(6) dismissal, and includes the statement, "I have observed massive overcrowding of inmates into cells too small for double occupation." (Affid. p. 2, p 11.) The magistrate judge, in granting the defendants' motion to dismiss under 12(b)(6), restricted himself to reviewing the complaint