**Leon R. THOMAS, Plaintiff,**

**v.**

**Officer W. HILL, Sergeant Phillip Stark, and Rodney Washington, Defendants.**

**No. 3:96–CV–0306 AS.**

United States District Court,
N.D. Indiana,
South Bend Division.

April 4, 1997.

Leon R. Thomas, Carlisle, IN, Pro Se.

Wayne E. Uhl, Office of Indiana Attorney General, Indianapolis, IN, for defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

Leon Thomas filed a complaint under 42 U.S.C. § 1983 without benefit of counsel, claiming that the defendants violated his rights under the Eighth Amendment and the Equal Protection Clause. Presently before the court is a motion to dismiss for failing to state a claim upon which relief can be granted, filed by defendants Philip Stark and Rodney Washington; Mr. Thomas has responded to the defendants' motion.[1] For the reasons discussed below, the court grants the defendants' motion to dismiss on the equal protection claim, and denies the motion as to the Eighth Amendment claim.

Mr. Thomas, an inmate at the Maximum Control Facility ("MCF") in Westville, alleges that George McClendon, an officer at the MCF, was arrested on February 16, 1996, for dealing drugs with MCF prisoners. Officer McClendon allegedly informed Officer W. Hill that it was Mr. Thomas who had set him up for the arrest, and Officer Hill informed other MCF staff members and prisoners about Mr. Thomas's involvement in the arrest. When prisoners did not believe Officer Hill, he brought "paperwork" to the prison which purportedly showed that Mr. Thomas was responsible for Officer McClendon's arrest, and Sergeant Stark allowed Officer Hill to show prisoners. the "paperwork."

After the "paperwork" was shown, Mr. Thomas was threatened by other prisoners, and Officer Washington told him he "deserved everything he got." Officer Hill and Sergeant Stark advised him that if he testified against Officer McClendon, "we will get you." Although Mr. Thomas brings this action only against Officers Hill and Washington and Sergeant Stark, he alleges that he is also being harassed by other MCF staff members. He seeks an immediate transfer to another prison facility, and compensatory damages for the mental anguish and stress he has suffered.

The movants contend that this action is barred by a provision in the Prison Litigation Reform Act ("PLRA"), Pub.L. 104–134, 110 Stat. 1321 (1996) ("PLRA"), which precludes suits by prisoners for mental or emotional injury without a prior showing of physical injury. 42 U.S.C. § 1997e(e). The movants additionally argue that because verbal threats and harassment do not rise to the

---

**1.** Mr. Thomas filed a "motion to show cause that plaintiff's [complaint] states a claim upon which relief could be granted," which the court construes and treats as his response to the defendants' motion.

level of cruel and unusual punishment in violation of the Eighth Amendment, Mr. Thomas has failed to state a claim cognizable under § 1983.

Turning first to the defendants' second argument, the court applies the Rule 12(b)(6) standard to Mr. Thomas's claims. Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes dismissal of complaints that state no actionable claim. When reviewing *pro se* complaints, the court must employ standards less stringent than if a complaint had been drafted by counsel. *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). The complaint's factual allegations must be taken as true and viewed in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Roots Partnership v. Lands' End, Inc.,* 965 F.2d 1411, 1416 (7th Cir.1992). The court need not, however, accept legal conclusions alleged in the complaint. *Vaden v. Maywood,* 809 F.2d 361 (7th Cir.), *cert. denied,* 482 U.S. 908, 107 S.Ct. 2489, 96 L.Ed.2d 381 (1987). Dismissal is appropriate if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Hishon v. King Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)(citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

Mr. Thomas claims that the defendants' actions constituted cruel and unusual punishment in violation of the Eighth Amendment. Verbal harassment or abuse of prisoners by guards does not state a constitutional deprivation under § 1983. *Ivey v. Wilson,* 832 F.2d 950 (6th Cir.1987); *Oltarzewski v. Ruggiero,* 830 F.2d 136 (9th Cir. 1987); *Patton v. Przybylski,* 822 F.2d 697, 700 (7th Cir.1987); *Purcell v. Coughlin,* 790 F.2d 263 (2d Cir.1986*); Martin v. Sargent,* 780 F.2d 1334 (8th Cir.1985); *Collins v. Cundy,* 603 F.2d 825, 827 (10th Cir.1979); *Blanton v. City of Indianapolis,* 830 F.Supp. 1198, 1202 (S.D.Ind.1993). Case law clearly establishes that Mr. Thomas has stated no claim based on his allegations of verbal harassment.

Mr. Thomas, however, has alleged more than verbal harassment. He complains that the defendants intentionally alerted other prisoners to his role in the arrest of Officer McClendon; an arrest that presumably impacted the availability of drugs to some of these prisoners. Prison officials who act with deliberate indifference to an inmate's safety violate the Eighth Amendment. *Billman v. Indiana Dep't of Corrections,* 56 F.3d 785, 788 (7th Cir.1995). In *Billman,* Chief Judge Posner gave the following colorful hypothetical describing deliberate indifference:

> If they place a prisoner in a cell that has a cobra, but they do not know that there is a cobra there (or even that there is a high probability that there is a cobra there), they are not guilty of deliberate indifference even if they should have known about the risk, that is, even if they were negligent—even grossly negligent or even reckless in the tort sense—in failing to know … But if they know that there is a cobra there or at least that there is a high probability of a cobra there, and do nothing, that is deliberate indifference.

*Id.* at 788 (citations omitted). Mr. Thomas alleges that after prisoners were informed that he had "set up" Officer McClendon, he received threats from some prisoners. It is reasonable to infer that certain prisoners whose source of drugs had been eliminated would pose a serious risk of harm to the party responsible for the situation. In other words, applying the above hypothetical, it is arguable that not only did the defendants place Mr. Thomas in a cell knowing there was a cobra there, but it was the defendants who placed the cobra in the cell. The court concludes that Mr. Thomas may be able to prove a set of facts consistent with his complaint that would entitle him to relief.

In addition, there are other considerations that weigh against dismissal at this time. Liberally construing this *pro se* complaint in accordance with the mandate of *Haines v. Kerner,* and recognizing that a case should not be dismissed due to the inadequacy of a *pro se* complaint unless it is clear that the plaintiff could not cure the deficiency by amendment, *Ricketts v. Mid-*

*west Nat'l Bank,* 874 F.2d 1177, 1183 (7th Cir.1989), the court concludes that the facts alleged may state a claim that has not been specifically asserted by Mr. Thomas.

■ Acts taken against a prisoner in retaliation for the exercise of a Constitutional right can state a claim under § 1983, even when the retaliatory acts do not themselves violate a Constitutional right. *Matzker v. Herr,* 748 F.2d 1142, 1151 (7th Cir.1984)(citing *Buise v. Hudkins,* 584 F.2d 223, 229 (7th Cir.), *cert. denied,* 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979)). Mr. Thomas does not claim that the defendants' verbal threats and abuse were motivated by retaliation, and the word "retaliate" does not appear in his complaint. Nonetheless, the facts alleged would arguably state a retaliation claim. Accepting Mr. Thomas's allegations as true, as the court must at this stage of the proceedings, the defendants threatened him and exposed him to a risk of harm because he exercised his rights under the First Amendment and to prevent him from further exercising his rights by testifying against Officer McClendon. Accordingly, the court will afford Mr. Thomas time to file a motion to amend his complaint asserting a retaliation claim.

■ Mr. Thomas also claims that the defendants violated his right to equal protection. An equal protection claim must be based on intentional discrimination against the plaintiff because of his or her membership in a particular class. *Washington v. Davis,* 426 U.S. 229, 247–48, 96 S.Ct. 2040, 2051–52, 48 L.Ed.2d 597 (1976); *Smith v. Town of Eaton,* 910 F.2d 1469, 1472 (7th Cir.1990). Unfair treatment of the plaintiff as an individual does not violate the clause. *Trautvetter v. Quick,* 916 F.2d 1140, 1149 (7th Cir.1990) (citing *Huebschen v. Dep't of Health and Social Servs.,* 716 F.2d 1167, 1171 (7th Cir.1983)). A plaintiff asserting an equal protection claim must allege specific facts substantiating his belief that the defendant singled him out as a member of a group at least in part for the purpose of causing an adverse effect on the group. *New Burnham Prairie Homes, Inc. v. Burnham,* 910 F.2d 1474, 1481 (7th Cir.1990); *see, e.g., Reed v. Faulkner,* 842 F.2d 960 (7th Cir.1988) (allegation of deliberate discrimination based on plaintiff's religious affiliations states equal protection claim); *Harris v. Greer,* 750 F.2d 617 (7th Cir.1984) (allegation of deliberate racial discrimination sufficient to state equal protection claim). Mr. Thomas merely alleges that he was treated unfairly, but does not allege that the defendants acted with the motive necessary to state an equal protection claim. The defendants' motion on this claim is, therefore, granted.

■ As Mr. Thomas has stated an Eighth Amendment claim and may be able to state a retaliation claim, the court turns to the defendants' contention that his claim would be barred by the PLRA. This action was commenced on April 23, 1996. The PLRA was signed into law on April 26, 1996. Section 803 of the PLRA amended the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997e, to include the following relevant provision:

> (e) LIMITATION ON RECOVERY— No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e). The defendants are correct that Mr. Thomas did not allege any physical injury. The issue the court must resolve is whether this provision should be applied to cases pending at the time the PLRA was enacted.[2]

■ The appropriate standard to apply when making this determination was set forth by the Supreme Court of the United

---

2. The clerk of the court received Mr. Thomas's complaint on April 23, 1996, and the complaint was docketed on May 7, 1996, when Mr. Thomas was granted *in forma pauperis* status. A civil suit is commenced by filing a complaint with the court. Fed.R.Civ.P. 3. For purposes of Rule 3, an *in forma pauperis* complaint is filed when it is placed in the custody of the clerk of the court.

*Smith–Bey v. Hosp. Adm'r,* 841 F.2d 751, 757 n. 5 (7th Cir.1988) (citing *Gilardi v. Schroeder,* 833 F.2d 1226, 1233 (7th Cir.1987); *Rodgers v. Bowen,* 790 F.2d 1550 (11th Cir.1986)); *accord, Lyons v. Goodson,* 787 F.2d 411, 412 (8th Cir. 1986). Thus, this action was commenced prior to the enactment of the PLRA.

States in *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). *Landgraf* instructs that:

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, i.e. whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

*Landgraf,* 511 U.S. at 280, 114 S.Ct. at 1505. Where Congress did not "expressly prescribe[ ] the statute's reach," the court relies on judicial "default rules," to determine whether the statute would have a retroactive effect. *Id.* If application of the statute would not have a retroactive effect, the rule requiring courts to apply the law in effect at the time it renders its decision controls. *Id.* at 268–78, 280–81, 114 S.Ct. at 1499–1502, 1505. The essential inquiry is whether the "new provision attaches new legal consequences to events completed before its enactment." *Id.* at 270, 114 S.Ct. at 1499.

Courts must "evaluate each provision of the Act in light of ordinary judicial principles concerning the application of new rules to pending cases and pre-enactment conduct." *Id.* at 280, 114 S.Ct. at 1505. The Seventh Circuit has not yet addressed whether § 1997e(e) applies to cases pending at the time of enactment, and the Court's decisions in regard to retrospective application of other provisions of the PLRA are not dispositive of the issue presented here, but offer guidance applying the *Landgraf test.*

Section 803 does not contain an effective date provision nor language clearly indicating that Congress intended the provision to apply to pending cases. Accordingly, the court must determine if application of § 1997e(e) to pending cases would have a retroactive effect. In *Reyes–Hernandez v. INS.,* 89 F.3d 490 (7th Cir.1996), the Seventh Circuit applied *Landgraf* to amendments to the Immigration and Nationality Act that barred judicial review of a final order of deportation denying discretionary relief to certain aliens. The Court concluded that the new provisions should not apply to cases in which aliens had conceded deportability believing they could obtain judicial review of a denial of discretionary relief, because to do so would attach a new legal consequence to the concessions, which occurred before the new provision was enacted. *Id.* at 492–93. Likewise, in *Cooper v. Casey,* 97 F.3d 914 (7th Cir.1996), the Seventh Circuit found that a provision of the PLRA placing limits on the amount of attorneys' fees that may be awarded in prison civil rights litigation, should not be applied retroactively because it attached new legal consequences to completed conduct—"namely the services rendered by the plaintiffs' counsel in advance of the passage of the new Act." *Id.* at 921. In contrast, in *Abdul–Wadood v. Nathan,* 91 F.3d 1023 (7th Cir.1996), the Seventh Circuit addressed the provision of the PLRA requiring prisoners who had filed three frivolous suits *in forma pauperis* to pay the full filing fee at the time of commencing any future suits. The Court concluded that this provision did not change the legal consequences of pre-PLRA events as parties proceeding *in forma pauperis* were always potentially responsible for paying the full filing fee, and the statute simply excused prepayment.

Prior to the PLRA, mental and emotional stress caused by a Constitutional violation was compensable under § 1983. *Carey v. Piphus,* 435 U.S. 247, 264, 98 S.Ct. 1042, 1052–53, 55 L.Ed.2d 252 (1978); *Thomas v. Farley,* 31 F.3d 557, 559 (7th Cir.1994) ("Mental torture is not an oxymoron, and has been held or assumed in a number of prisoner cases.. to be actionable as cruel and unusual punishment."); *Rakovich v. Wade,* 819 F.2d 1393, 1399 (7th Cir.), *vacated on other grounds,* 850 F.2d 1180, *cert. denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988); *cf. Hudson v. McMillian,* 503 U.S.

1, 16, 112 S.Ct. 995, 1004, 117 L.Ed.2d 156 (1992) (Blackmun, J., concurring) ("It is not hard to imagine inflictions of psychological harm—without corresponding physical harm—that might prove to be cruel and unusual punishment ... 'pain' in its ordinary meaning surely includes a notion of psychological harm"). A prisoner's civil rights claim accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action. *Wilson v. Giesen,* 956 F.2d 738, 740 (7th Cir.1992).

At the time Mr. Thomas fried his complaint, he was entitled to seek compensatory damages even though he had suffered no physical injury. Moreover, at the time the defendants threatened and harassed Mr. Thomas in retaliation for his role in Officer McClendon's arrest, they could be held liable for monetary damages for purely psychological harm caused by their conduct. The subject provision does more than alter the procedural requirements surrounding a plaintiff or defendant's existing rights or obligations, as in *Abdul–Wadood v. Nathan.* Moreover, unlike the circumstances of *Cooper or Reyes–Hernandez,* neither party structured their conduct in reliance on a right that was eliminated by the subject provision. Nonetheless, in *Reyes–Hernandez,* the Court stated that a "statute that diminishes substantive rights, or remedies. will not be applied ... to events completed before the effective date of the statute (or the date of enactment if no separate effective date is stated)...." *Reyes-Hernandez* at 492. Application of § 1997e(e) to pending cases would eliminate claims that were legally cognizable when brought, and extinguish liability for conduct giving rise to liability at the time it occurred. This, the court concludes, attaches new legal consequences to events completed before the provision's enactment. *See, Harris v. Lord,* 957 F.Supp. 471, 474–75 (S.D.N.Y.1997) (citing *Ramirez v. County of San Francisco,* 1997 WL 33013 at *8 (N.D.Cal. Jan.23, 1997)). Because this result amounts to an impermissible retroactive effect, the court will not dismiss Mr. Thomas's complaint on the basis of § 1997e(e).

For the foregoing reasons, the court

(1) **GRANTS** the defendants' motion to dismiss [docket entry # 14] as to the Equal Protection claim;

(2) **DENIES** the defendants' motion to dismiss as to the Eighth Amendment claim;

(3) **AFFORDS THE PLAINTIFF** to and including May 1, 1997, to file, if he so chooses, a motion to amend his complaint and an amended complaint; and,

(4) **DIRECTS** the clerk to provide the plaintiff with the proper form for filing an amended complaint.

**SO ORDERED.**