NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 2, 2008[*]
Decided April 2, 2008

**Before**

MICHAEL S. KANNE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 07-2929

| | |
|---|---|
| DENNIS P. GLICK, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 06-586-GPM |
| ROGER E. WALKER, JR., et al., *Defendants-Appellees*. | G. Patrick Murphy, *Judge*. |

**O R D E R**

Illinois inmate Dennis Glick, a sex offender formerly housed in the Menard Correctional Center, filed this suit against several prison officials claiming that they were deliberately indifferent toward his mental health needs and also the risks of harm posed by

---

[*] Appellees notified this court that they were not served with process in the district court and would not be filing a brief or otherwise participating in this appeal. After examining the appellant's brief and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the appellant's brief and the record. FED. R. APP. P. 34(a)(2).

one cellmate's smoking and another cellmate's threat to kill him. He also claims that prison officials retaliated against him for filing grievances, in violation of the First Amendment, and that they did not allow him to participate in a mental health program, in violation of the Americans with Disabilities Act. The district court screened his complaint, *see* 28 U.S.C. § 1915A, and dismissed it for failure to state a claim. We vacate the judgment and remand the case for further proceedings on all claims except the ADA claim, on which we affirm the dismissal.

For purposes here we accept as true the allegations in Glick's complaint. *See Westefer v. Snyder*, 422 F.3d 570, 574 (7th Cir. 2005). According to Glick, in May 2005 a prison psychiatrist diagnosed him with a mental illness and ordered that he take medication and attend group therapy. Five months later, after learning that his security status prohibited him from participating in group therapy, Glick filed a grievance, requesting that his status be adjusted so that he could attend therapy. His grievance was denied, so he wrote to several Department of Corrections administrators, including Director Roger Walker, again requesting that his security status be lowered. In response he was told that he could not participate in group therapy because of his security status.

During this time, Glick was admitted to the hospital at Menard because he had chest pain and trouble breathing, and he was diagnosed with emphysema. Upon returning to his cell after his stay in the hospital, he filed an emergency grievance, complaining that his cellmate smoked, which increased his chest pain, and he requested a transfer. Correctional counselor James Alms denied the request, and a month later grievance officer Tyrone Murray also denied the request, and warden Alan Uchtman concurred. Glick appealed to Walker, but the appeal was denied.

Soon after, in February 2006, Glick also reported that a new cellmate had threatened to kill him. Glick wrote two letters to a social worker at Menard, explaining that the cellmate had said that he had been charged with gang involvement, had been transferred from another prison for threatening to kill a sex offender, and had stabbed two inmates many years ago. Glick also said that this cellmate threatened his life and said he would "do something" while Glick was asleep. Glick explained that these statements, combined with the fact that Glick is a sex offender and has a mental illness, left him vulnerable enough to justify a transfer. When Glick met with the social worker a month later, she told him that she had given his letters to an officer in Internal Affairs, but no one from Internal Affairs followed up with Glick. In the meantime, Glick's cellmate did attack him; he pushed Glick's head against the wall, causing it to bleed, bit Glick's arm as Glick attempted to prevent him from grabbing a weapon, and threatened to stab Glick with a pencil. Glick told the social worker about the attack and filed an emergency grievance, which warden Uchtman denied.

Less than a month later, Glick was transferred to Pontiac Correctional Center as part of a routine annual transfer. At Pontiac an Internal Affairs officer interviewed Glick about the attack by his former cellmate, and Glick signed a written statement describing it. He was then removed from protective custody against his wishes, and a month later he was transferred to the general population at Stateville Correctional Center. From Stateville, he filed an appeal of the denial of his grievance about the attack, but the appeal was denied as untimely by Melody Ford, a member of the Administrative Review Board.

Glick filed suit in July 2006, claiming that prison officials were deliberately indifferent to (1) his mental health needs, (2) the substantial risk of harm from his cellmate's smoking, and (3) the substantial risk of harm posed by the cellmate who threatened to, and did, attack him. He also claimed that officials (4) retaliated against him for filing grievances when they transferred him out of protective custody at Pontiac and then to Stateville and (5) violated Title II of the ADA by denying him access to mental health services. The district court, however, read his complaint as making only three claims—deliberate indifference to Glick's mental health needs, retaliation, and violation of the ADA. It recognized that mental illness can be considered a serious medical need but held that Glick failed to state a claim because he did not "name any defendant personally responsible for denying him treatment." Similarly, the court held that Glick did not state a retaliation claim because, as it interpreted the complaint, Glick did not say who retaliated against him or what the specific retaliatory act was. Finally, the court dismissed Glick's ADA claim, reasoning that the ADA does not allow Glick to sue state officers in federal court. The district court failed to mention anything about Glick being exposed to second-hand smoke and the attack by his cellmate. On appeal Glick argues that all of his claims, including the ones not addressed by the district court, should have survived screening.

We review de novo a dismissal under § 1915A for failure to state a claim. *Westefer*, 422 F.3d at 574. To satisfy the notice-pleading requirements of Federal Rule of Civil Procedure 8(a)(2), a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *see Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007). A plaintiff must "provide the grounds of his entitlement to relief" by saying enough to "raise a right to relief above the speculative level," *Twombly*, 127 S. Ct. at 1964-65 (internal quotation marks, brackets, and citation omitted), though "[s]pecific facts are not necessary," *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007). *See Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007). Pro se complaints are construed liberally and held to less-exacting standards than those drafted by counsel. *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001).

We begin with the two claims the district court did not address—that prison officials were deliberately indifferent to the risks of harm Glick faced from one cellmate's smoking

and another cellmate's threat to kill him. Although Glick separately identified these claims in his complaint and devoted five numbered paragraphs to each claim, the district court did not mention them in its order dismissing the complaint. We hold that Glick has alleged enough to state a claim on both of these claims, and we vacate their dismissal.

First, Glick's complaint includes enough detail to state an Eighth Amendment claim with regard to the second-hand smoke. Exposure to second-hand smoke can give rise to two types of Eighth Amendment claims—one for present injury and one for future injury. To state a claim based on present injury, an inmate must allege that prison officials knew of and disregarded "serious existing health problems" caused by the second-hand smoke. *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999). If the inmate has a serious respiratory condition that low levels of second-hand smoke may aggravate, the prison must provide a non-smoking environment. *See Powers v. Snyder*, 484 F.3d 929, 932 (7th Cir. 2007); *Alvarado*, 267 F.3d at 653. To state a claim based on future injury, an inmate must allege that prison officials knew of and disregarded exposure to levels of second-hand smoke that "pose an unreasonable risk of serious damage to his future health." *Helling v. McKinney*, 509 U.S. 25, 35 (1993); *see Alvarado*, 267 F.3d at 651. Glick alleges that he was diagnosed with emphysema and suffered increased chest pain due to his cellmate's smoking, and that defendants Alms, Murray, Walker, and Ford knew of his diagnosis and complaint and did nothing to alleviate his pain. These allegations are enough to state a claim based on a present injury, *see Powers*, 484 F.3d at 932-33; *Alvarado*, 267 F.3d at 650-51, and also based on a potential future injury, *see Lehn v. Holmes*, 364 F.3d 862, 864, 872 (7th Cir. 2004); *Alvarado*, 267 F.3d at 649-51.

Second, Glick's complaint included enough detail to state a claim that prison officials violated his Eighth Amendment rights by not protecting him from the cellmate who attacked him. To state a claim for failure to prevent harm, the inmate must allege that prison officials knew of and disregarded a "substantial risk of serious harm," *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994); *see Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005), and that harm did occur, *see Babcock v. White*, 102 F.3d 267, 270-72 (7th Cir. 1996). Glick alleges that he gave a prison social worker two letters detailing the threats his cellmate made and his concerns that, as a sex offender and mental health patient, he would be a likely target for his violence-prone cellmate, all of which sufficiently suggests that he faced "a substantial risk beforehand that . . . serious harm might actually occur." *Brown*, 398 F.3d at 910-11 (recognizing that risk is substantial when inmate threatened by another inmate with "known 'propensities' of violence toward" particular class of people). He also alleges that the social worker told him she had given his letters to Internal Affairs, but he says he heard nothing from Internal Affairs and, subsequently, his cellmate beat him badly enough to cause his head to bleed. Glick states enough to satisfy the serious-harm requirement. *See Farmer*, 511 U.S. at 834 (reasoning that "[b]eing violently assaulted in prison is simply not

part of the penalty" (internal quotation marks and citation omitted)); *Brown*, 398 F.3d at 910-11 (holding that severe beating by fellow resident satisfied pleading standard for serious harm).

Glick's allegations also sufficiently allege that Internal Affairs officer "John Doe"—and perhaps others who might be identified through discovery—acted with deliberate indifference.[1]  According to Glick's allegations, this defendant knew of Glick's cellmate's threats and knew of the cellmate's prior threats against other sex offenders.  *See Haley v. Gross*, 86 F.3d 630, 642-43 (7th Cir. 1996) (upholding jury verdict for inmate because jury could reasonably find defendants deliberately indifferent when inmate had told them of problems with cellmate several times but they did nothing).  On remand, Glick must be given an opportunity to identify the "John Doe" in Internal Affairs.  *See Billman v. Ind. Dep't of Corrs.*, 56 F.3d 785, 789 (7th Cir. 1995) ("If a prisoner makes allegations that if true indicate a significant likelihood that someone employed by the prison system has inflicted cruel and unusual punishment on him, and if the circumstances are such as to make it infeasible for the prisoner to identify that someone before filing his complaint, his suit should not be dismissed as frivolous.").

Turning to the claims the district court did address, we hold that Glick's allegations that prison officials refused to let him participate in group therapy ordered by the prison psychiatrist state a deliberate-indifference claim.  The court dismissed this claim only because Glick did not name as a defendant the official personally responsible for denying his treatment.  But an inmate's "initial inability to identify" who caused his deprivation alone is not a proper ground for dismissal, as long as allegations state a claim against some identifiable person, *Billman*, 56 F.3d at 789; *see also Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 555 & n.3 (7th Cir. 1996) (collecting cases), which Glick's allegations do.  To state a claim in this context, an inmate need allege only that a prison official responded with deliberate indifference to a serious medical need.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  To prevail an inmate must show that his medical condition is "objectively, sufficiently serious" and that the officials knew of and disregarded "an excessive risk to inmate health or safety."  *Farmer*, 511 U.S. at 834, 837.

Glick alleges that he was diagnosed with a mental illness that needed to be treated, which we have recognized as a serious medical need.  *See Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001); *Wellman v. Faulkner*, 715 F.2d 269, 272 (7th Cir. 1983).  He also alleges that defendants Ford and Walker knew about his diagnosis and put his health at risk by not

---

[1] Glick did not name the social worker to whom he gave his letters as a defendant in his complaint.

doing anything to get him the treatment a psychiatrist deemed necessary. *See Reed v. McBride*, 178 F.3d 849, 854 (7th Cir. 1999); *Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996). Glick alleges, however, that prison officials told him that his security status prevented him from participating in group therapy. Officials do not act with deliberate indifference if they respond reasonably to an inmate's medical needs, *see Guzman v. Sheahan*, 495 F.3d 852, 857 (7th Cir. 2007); *Johnson v. Doughty*, 433 F.3d 1001, 1010-11 (7th Cir. 2006), but we cannot determine at this stage whether the officials' reliance on a policy prohibiting inmates with Glick's status from participating in group therapy was a reasonable response because the policy is not in the record and we have not heard the prison's rationale for it, *cf. Norfleet v. Webster*, 439 F.3d 392, 397 (7th Cir. 2006).

We also vacate the district court's dismissal of Glick's claim that prison officials retaliated against him for filing grievances. To state a claim for retaliation, an inmate must allege enough to put defendants on notice so that they can file an answer, which generally includes specifying the retaliatory act and the protected activity that motivated the defendants. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002); *see also McElroy v. Lopac*, 403 F.3d 855, 858 (7th Cir. 2005)*; Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005). Although the district court concluded that Glick had not specified the retaliatory conduct, his complaint says that he received a "retaliatory transfer out of protective custody" at Pontiac and a transfer to Stateville because of his complaints to prison officials. Thus the district court erred in holding that Glick failed to allege the retaliatory act. Additionally, the district court dismissed Glick's claim because, it reasoned, he did not specify who retaliated against him and that even if the retaliation claim was against defendant Walker, to whom Glick sent grievances about being denied group therapy, Glick had not "made the necessary connection to show that Defendant Walker was personally responsible for denying him any constitutional rights." But Glick was not required to prove that connection at the pleading stage; he need only "give enough detail to illuminate the nature of the claim and allow defendants to respond." *George v. Smith*, 507 F.3d 605, 608 (7th Cir. 2007).

Furthermore, although Glick's complaint is not specific about which grievances constitute his protected activity, it may include the grievances based on second-hand smoke and the attack by his cellmate, which the district court did not address. Defendants Ford, Murray, Alms, Uchtman, and Walker were involved in denying those grievances and could be possible defendants on the retaliation claim. And, again, we read pro se complaints from inmates liberally and will not uphold a dismissal based on failure to name the proper defendant as long as the allegations otherwise state a claim. *See Donald*, 95 F.3d at 555. Although the facts may ultimately show that none of the defendants who responded to Glick's grievances were responsible for his transfers, Glick has pleaded enough to state a retaliation claim.

Finally, we affirm the district court's dismissal of Glick's ADA claim. The district court held that Glick could not sue the prison officials in federal court because Congress did not waive Eleventh Amendment immunity for private suits under the ADA. *See Erickson v. Bd. of Governors of State Colls. & Univs. for Ne. Ill. Univ.*, 207 F.3d 945, 952 (7th Cir. 2000); *Stanley v. Litscher*, 213 F.3d 340, 343 (7th Cir. 2000). The district court is correct insofar as Glick is seeking damages. *See Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 374 (2001). But Glick can sue these officials in their official capacity for prospective injunctive relief, *see Bruggeman ex rel. Bruggeman v. Blagojevich*, 324 F.3d 906, 912 (7th Cir. 2003), which he did. Yet, we affirm the dismissal of this claim because Glick has failed to state a claim under Title II of the ADA. To state such a claim, the plaintiff must allege that he was excluded from participation in a public entity's program because of his disability. *See* 42 U.S.C. § 12132; *Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 750 (7th Cir. 2006); *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004). Glick has pleaded himself out of court because he alleges that he was denied access to group therapy because of his security status, not because of any disability. *See Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999) (affirming dismissal of inmate's challenge to denial of access to jail program based on refusal to submit to HIV test because inmate alleged he was not HIV-positive and policy applied to all inmates).

For the foregoing reasons, we VACATE the dismissal of Glick's claims that prison officials were deliberately indifferent to his mental health needs and to the risks of harm posed by one cellmate's smoking and another cellmate's threat to kill him as well as Glick's claim that prison officials retaliated against him for filing grievances, and we REMAND the case for further proceedings. We take no position about whether Glick's claims will ultimately be successful, but we recognize that he has alleged enough to state claims regarding all of these allegations. We AFFIRM the dismissal of Glick's ADA claim.