In the
United States Court of Appeals
For the Seventh Circuit

No. 00-3959

CHAD J. ALVARADO,

Plaintiff-Appellee,

v.

JON E. LITSCHER, Secretary, JANE
GAMBLE, B. MCCREEDY, et al.,

Defendants-Appellants.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 99 C 0676--Barbara B. Crabb, Chief Judge.

ARGUED April 18, 2001--DECIDED September 28, 2001


   Before HARLINGTON WOOD, JR., DIANE P. WOOD,
and WILLIAMS, Circuit Judges.

   HARLINGTON WOOD, JR., Circuit Judge. Chad
J. Alvarado filed a complaint pursuant to
42 U.S.C. sec. 1983 against Jon E.
Litscher, Secretary of the Wisconsin
Department of Corrections, Jane Gamble,
warden of Kettle Moraine Correctional
Institution ("KMCI"), and B. McCreedy,
health services manager at KMCI
(collectively referred to as "the
defendants"). The district court denied
the defendants' motion to dismiss under
Fed. R. Civ. P. 12(b)(6) and on the
ground of qualified immunity. The
defendants filed a timely appeal as to
the qualified immunity issue only.

I.  BACKGROUND

   On October 10, 1999, Alvarado, acting
pro se, filed a complaint stating the
defendants deprived him of his Eighth
Amendment constitutional right in
violation of 42 U.S.C. sec. 1983. The
complaint alleged that Alvarado, a
twenty-seven-year-old male, suffers from
severe chronic asthma, which is made
worse by exposure to environmental
tobacco smoke ("ETS"). Medical
documentation submitted with the
complaint supports this allegation and
defendants do not dispute that Alvarado's

asthma is severe. Letters and records dating back to 1982 state that Alvarado "is allergic to . . . smoke," and that he has "a long history of perennial asthma." The term "severe asthma" is also used, and the records indicate multiple hospitalizations and trips to the emergency room for asthma-related problems.

Alvarado maintains that while he was processed at the Dodge Correctional Institution in Waupun, Wisconsin, he suffered exposure to ETS, causing his asthma to worsen. Alvarado claims his asthma continued to worsen after being transferred to KMCI in Plymouth, Wisconsin. Despite his placement in KMCI's non-smoking unit with a non-smoking roommate, Alvarado claims that other prisoners in the unit smoked in violation of prison policy because the guards were frequently not at their post to enforce the smoking ban. Alvarado also states that because smoking is permitted in the common areas of the prison, he is unable to participate in programs that would enhance his chances of being paroled. He alleges that his health deteriorated as a result of his exposure to ETS and he was forced to increase his daily asthma medication dosages. He maintains the defendants acted with deliberate indifference to his complaints about his exposure to ETS./1 Alvarado filed multiple griev-ances within the prison system regarding his ETS exposure which were rejected or dismissed. Alvarado also alleges that the medical staff was going to put him in the infirmary, but he chose not go because such an action would have resulted in his being withdrawn from a program for early release.

Under the initial screening requirement with an in forma pauperis proceeding,/2 the district court entered an order on November 9, 1999, finding that Alvarado had stated a claim upon which relief may be granted, allowing Alvarado to proceed with his complaint. The defendants then filed a Rule 12(b)(6) motion to dismiss for failure to state a claim for which relief may be granted and asserted a defense of qualified immunity. The district court denied their motion to dismiss, but, according to the court, through an oversight, failed to address the issue of qualified immunity.

Defendants appealed the denial, but the case was remanded to allow the district court to correct the error.

On October 13, 2000, the district court issued its order explaining the denial of defendants' qualified immunity. Specifically, the district court found that the complaint stated a violation of Alvarado's Eighth Amendment right due to the defendants alleged indifference to Alvarado's existing and future health by allowing him to be exposed to ETS, and that the right was clearly established at the time of the violation. However, the district court refused to decide the factual issue of whether the exposure reached a level sufficiently high enough to violate contemporary standards of decency as interpreted under the Eighth Amendment.

II.  ANALYSIS

"This Court reviews de novo the district court's denial of defendant's motion to dismiss on grounds of qualified immunity." Milazzo v. O'Connell, 108 F.3d 129, 131 (7th Cir. 1997). When reviewing a motion to dismiss, "We accept all the factual allegations in the complaint and draw all reasonable inferences from these facts in favor of the plaintiff." Arazie v. Mullane, 2 F.3d 1456, 1465 (7th Cir. 1993). A claim may be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Allegations of a pro se complaint are held "to less stringent standards than formal pleadings drafted by lawyers . . . ." Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam). Accordingly, pro se complaints are liberally construed. See Wilson v. Civil Town of Clayton, Ind., 839 F.2d 375, 378 (7th Cir. 1988).

In order to state a cause of action under 42 U.S.C. sec. 1983, the Supreme Court requires only two elements: "First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of the right acted under color of state . . . law." Gomez v. Toledo, 446 U.S. 635, 640 (1980). These elements may be put forth in a "short and plain statement of the

claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). In reviewing the complaint on a motion to dismiss, "no more [is required] from plaintiff['s] allegations of intent than what would satisfy Rule 8's notice pleading minimum and Rule 9(b)'s requirement that motive and intent be pleaded generally." Triad Assoc., Inc. v. Robinson, 10 F.3d 492, 497 (7th Cir. 1993).

Alvarado's complaint stated an Eighth Amendment claim when he alleged that because of the prison officials' deliberate indifference, he was being exposed to levels of ETS which aggravated his chronic asthma, thereby endangering his existing health, a claim recognized as an Eighth Amendment violation twenty-five years ago in Estelle v. Gamble, 429 U.S. 97 (1976). Id. at 104 (holding that in order to state a violation of the Eighth Amendment, an inmate must demonstrate that prison officials showed "deliberate indifference to serious medical needs"). He also stated a valid claim as to his future health under Helling v. McKinney, 509 U.S. 25 (1993). Id. at 35 (holding that an inmate stated a cause of action under the Eighth Amendment by alleging that prison officials had, with deliberate indifference, exposed him to levels of ETS that posed an unreasonable risk of serious damage to his future health); Oliver v. Deen, 77 F.3d 156, 159-60 (7th Cir. 1996). Alvarado's complaint sufficiently alleged deprivation of federal rights by one acting under color of state law.

In addressing the district court's denial of defendants' motion to dismiss based on qualified immunity, we note that a complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds. See Jacobs v. City of Chicago, 215 F.3d 758, 765 n.3 (7th Cir. 2000). Because an immunity defense usually depends on the facts of the case, dismissal at the pleading stage is inappropriate: "[T]he plaintiff is not required initially to plead factual allegations that anticipate and overcome a defense of qualified immunity." Id. As noted in Jacobs' concurrence, "Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground for dismissal. . . . and when defendants do assert immunity it is essential to consider

facts in addition to those in the complaint." Id. at 775 (Easterbrook, J., concurring).

Qualified immunity protects government officials from civil liability when performing discretionary functions so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To overcome a defense of qualified immunity, the plaintiff must first allege the deprivation of an actual constitutional right, and second, show that the right was clearly established at the time of the alleged violation. See Wilson v. Layne, 526 U.S. 603, 609 (1999). Because we have found that Alvarado alleged the deprivation of valid constitutional rights as to his existing and future health, he has met the first prong.

Under the second prong, as previously noted, the danger to a prisoner's existing health needs has long been recognized under Estelle. The remaining question is whether the constitutional right as to Alvarado's future health was clearly established in 1998-99 when the violations occurred. To invoke a "clearly established" right, the Supreme Court has explained that the right must be "particularized" to the extent that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Although the petitioner does not need to point to a case identical to his own, he must show that, "in light of pre-existing law," a reasonable defendant would have known that his actions were unlawful. Id.; Nabozny v. Podlesny, 92 F.3d 446, 456 (7th Cir. 1996) ("Under the doctrine of qualified immunity, liability is not predicated upon the existence of a prior case that is directly on point.").

The threat to future health was clearly established in 1993 when the Supreme Court held that a prisoner "states a cause of action under the Eighth Amendment by alleging that [prison officials] have, with deliberate indifference, exposed him to levels of ETS that pose an unreasonable risk of

serious damage to his future health." Helling, 509 U.S. at 35. In Helling, the Supreme Court found that the prisoner had stated a valid cause of action under the Eighth Amendment and that the district court had erred in ordering a directed verdict in favor of the prison officials; "We cannot rule at this juncture that it will be impossible for McKinney . . . to prove an Eighth Amendment violation based on exposure to ETS. . . . [and] remand to the district court to provide an opportunity for McKinney to prove his allegations . . . ." Id.

Since 1993, this circuit has addressed ETS in the prison context on several occasions. See Henderson v. Sheahan, 196 F.3d 839 (7th Cir. 1999); Oliver, 77 F.3d 156; Goffman v. Gross, 59 F.3d 668 (7th Cir. 1995); Beauchamp v. Sullivan, 21 F.3d 789 (1994) (noting the Supreme Court has recognized that "prison officials may have a constitutional duty to protect inmates from high levels of ambient ciga rette smoke"). The petitioner in Henderson failed to state a claim under sec. 1983 because he had never been diagnosed as having a medical condition that necessitated a smoke-free environment nor had he been treated for any medical problems brought about by his exposure to ETS. 196 F.3d at 846. In Oliver, 77 F.3d at 160, the prison medical director stated that Oliver suffered from mild asthma which did not require him to be placed in a cell with only nonsmokers. Unlike the petitioners in Henderson and Oliver, Alvarado presented evidence of chronic, severe asthma from childhood, which was worsened by ETS. Although no case in our circuit has previously addressed this issue on point, Oliver's focus on the seriousness of the inmate's medical condition under the Helling analysis supports the district court'sinterpretation. See id. at 160; see also Hunt v. Reynolds, 974 F.2d 734, 735-36 (6th Cir. 1992) (finding that Eighth Amendment is violated "by forcing a prisoner with a serious medical need for a smoke-free environment to share his cell with an inmate who smokes").

Under the reasonable person standard of Harlow and Anderson, it is not unreasonable to assume that in 1998-99, five years after the decision in Helling, prison officials knew or should have

known that even though Alvarado was housed with a non-smoking cellmate on a non-smoking unit, in light of his severe asthmatic condition, an environment in which ambient tobacco smoke is present could pose a serious risk to his future health, thereby constituting a violation of the Eighth Amendment. Like the complaint in Helling, Alvarado's complaint, liberally construed, alleges that defendants' deliberate failure to enforce smoking rules is resulting in his exposure to levels of ETS that are posing an unreasonable threat to his future health. See 509 U.S. at 28, 36. Given the decision in Helling, the right of a prisoner to not be subjected to a serious risk of his future health resulting from ETS was clearly established in 1998-99. Both prongs of the Wilson test have been met to defeat defendants' qualified immunity defense at this time.

## III. CONCLUSION

For the above-stated reasons, we affirm the district court's denial of defendants' Rule 12(b)(6) motion to dismiss on the ground of qualified immunity.

## FOOTNOTES

/1 Defendants argue at length that Alvarado never alleged "deliberate indifference" on their part. However, Alvarado's original complaint alleges, "The defendants in this action are actin [sic] with deliberate indeference [sic] towards our numerous request [sic] to remain smoke free," Conclusion of Statement of Claim by Plaintiffs, para. 6, and the first paragraph of his memorandum of Supporting Case Law filed with the complaint, states, "Eighth Amendment protection against against [sic] deliberate indeference [sic] to prison health problems extends to conditions that threaten to cause health problems in the future, as eell [sic] current serious health problems. Helling v. McKinney, 113 S.Ct. 2475 at 2480 (1993)."

/2 28 U.S.C. sec. 1915A provides in pertinent part:

(a) Screening.--The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a government entity.

(b) Grounds for Dismissal.--On review, the court

shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint--

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.