**Ricky OUTLAW, Plaintiff–Appellant,**

v.

**Evelyn RIDLEY–TURNER, et al., Defendants–Appellees.**

No. 02–2545.

United States Court of Appeals, Seventh Circuit.

Submitted Dec. 16, 2002.*

Decided Dec. 16, 2002.

---

* The defendants filed a motion for an order of non-involvement, which we granted. We thus

**230**

Before FAIRCHILD, EVANS, and WILLIAMS, Circuit Judges.

**ORDER**

Indiana inmate Ricky Outlaw sued the commissioner and deputy commissioner of the Indiana Department of Corrections ("IDOC"), the superintendents of the

Indiana State Prison ("ISP") and of the Maximum Control Complex ("MCC"), and prison physicians at both the ISP and the MCC under 42 U.S.C. § 1983. He alleges that the defendants violated the Eighth Amendment through their deliberate indifference to his medical needs and conditions of confinement. The district court dismissed his complaint under the screening mechanism of 28 U.S.C. § 1915A for failure to state a claim. Outlaw appeals and we affirm.

As relevant here, Outlaw alleges that from June 17 to October 22, 1999, he was housed in the ISP detention unit. During that time he came into contact with human waste. As a result, he says, he contracted hepatitis C, which the defendant ISP physician, Dr. Jaiyebo, diagnosed in late January 2001. Outlaw also alleges that beginning in March 2000, before he was even diagnosed, the IDOC commissioner and deputy commissioner conspired to deny medical attention to inmates with hepatitis C by implementing Health Care Services Directive 3.09. He claims that the remaining defendants participated in the conspiracy by enforcing this directive, which allegedly includes provisions that prevent Outlaw and other inmates with hepatitis C from receiving medical care. Outlaw experiences multiple adverse effects from the hepatitis C, including vomiting, weight loss, severe stomach pains, and fatigue.

We review dismissals under § 1915A for failure to state a claim upon which relief can be granted de novo and will affirm only when it appears beyond doubt that no set of facts supports the plaintiff's claim. *Wynn v. Southward*, 251 F.3d 588, 591–92 (7th Cir.2001) (per curiam). As Outlaw is proceeding pro se, we construe his complaint liberally and subject it to less strin-

consider only the appellant's brief. After an examination of the brief and the record, we have concluded that oral argument is unnec-

essary. Thus, the appeal is submitted on the brief and the record. *See* Fed. R.App. P. 34(a)(2).

gent scrutiny than complaints prepared by counsel. *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir.2001). On appeal Outlaw argues that he adequately stated an Eighth Amendment claim by alleging that he is not being treated for hepatitis C as a result of Health Care Services Directive 3.09, and that the unsanitary conditions in the prison caused him to contract hepatitis C. The district court did not address the latter contention.

Eighth Amendment claims contain both an objective and a subjective component. Initially, Outlaw must allege an "objectively 'sufficiently serious'" deprivation of the "'minimal civilized measures of life's necessities.'" *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (citations omitted). For a denial-of-treatment claim, Outlaw must first allege that he has an objectively serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Wynn*, 251 F.3d at 593. For a claim premised on failure to prevent exposure to a risk of potential future harm, Outlaw must allege that his future health was unreasonably jeopardized by a risk to which contemporary society would not expose any unwilling individual. *See Helling v. McKinney*, 509 U.S. 25, 36, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993); *Alvarado*, 267 F.3d at 651. Under either theory, Outlaw must also allege that the defendants acted with a "sufficiently culpable state of mind," *Farmer* 511 U.S. at 834; that is, they must have been aware of Outlaw's medical need or exposure to harmful conditions and disregarded the excessive risk either one posed to his health. *See Wynn*, 251 F.3d at 593; *Zentmyer v. Kendall County, Ill.*, 220 F.3d 805, 811 (7th Cir.2000) (pre-trial detainee). A defendant's knowledge of a substantial risk may be inferred from the obviousness of the risk. *Farmer*, 511 U.S. at 842.

We assume, as the district court did, that hepatitis C is an objectively serious medical condition. *See Zentmyer*, 220 F.3d at 810 (medical condition diagnosed by a physician as needing treatment is objectively serious); *Moore v. Duffy*, 255 F.3d 543, 545 (8th Cir.2001) (noting that defendant doctor conceded that hepatitis C is a serious medical condition). But Outlaw's complaint falters on the second, subjective component of an Eighth Amendment claim.

None of Outlaw's allegations even remotely support the inference that the defendants were deliberately indifferent to *his* need for treatment by creating and implementing Directive 3.09. Outlaw does not contend that any defendant except Dr. Jaiyebo, who diagnosed him, even knew that he suffered from a serious medical need. *See Wynn*, 251 F.3d at 593 (prisoner must show prison official was subjectively aware of prisoner's serious medical needs and disregarded excessive risk to prisoner's health or safety from lack of treatment); *Payne v. Churchich*, 161 F.3d 1030, 1042 (7th Cir.1998) (dismissing claim based on pre-trial detainee's suicide because none of allegations suggested defendant knew or had reason to suspect substantial risk of suicide). He alleges only that the defendants knew about Directive 3.09. While the directive may establish procedures for treating hepatitis C, it does not suggest treatment should be denied. *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir.1997) ("the Constitution is not a medical code that mandates specific medical treatment.") (citation and internal quotations omitted). The fact that the defendants knew about and implemented the directive does not therefore support the inference that they knew or should have known it would cause Outlaw to be denied treatment.

Nor does Outlaw allege any indifference by Dr. Jaiyebo. Dr. Jaiyebo wrote Outlaw in January 2001 informing him of the diagnosis and explaining that Outlaw had been "scheduled already to be seen by the doctor ... for the hepatitis C." In his complaint, Outlaw does not suggest that the scheduled treatment was not received, or that, if it was not, that Dr. Jaiyebo was aware of that fact.

Similarly, Outlaw's contention that he contracted hepatitis C from exposure to human waste fails because he does not allege that any of the defendants knew about the waste in the segregation unit. It is extremely unlikely that Outlaw contracted hepatitis C from exposure to human waste.[1] But even if he did, Outlaw's complaint still does not even hint at the possibility that any of the defendants knew about the unsanitary conditions in the segregation unit. Therefore, his allegation that sometime while in the ISP detention unit he "was subjected to conditions of human waste" also fails to state a claim for an Eighth Amendment violation. Nothing in Outlaw's complaint or the materials included with it support his conclusory allegation that defendants "wontonly [sic] and willfully" violated his constitutional rights with "intentional and reckless indifference."

1. The materials Outlaw submitted with his complaint identify the "major risk factors for acquiring hepatitis C" as "intravenous drug use and transfusion of blood or blood products prior to 1992." App. 5. Further information from links on a web page included with Outlaw's complaint reveals the following major risk factors for hepatitis C: being a hemophelia patient who received clotting products prior to 1987; receiving hemodialysis; receiving an organ transplant; participating in IV drug use; receiving a blood transfusion prior to 1992; receiving a needle-stick injury; obtaining a tattoo or bodypiercing; and engaging in sexual activity with multiple partners (heterosexual or homosexual). *See*

Accordingly, the judgment of the district court is AFFIRMED.

Schering Hepatitis Innovations, Major Risk Factors for Hepatitis A, B and C, at http://www.hepatitisinnovations.com/about/risk/abc.html (last visited Dec. 7, 2002); *see also Stedman's Medical Dictionary* 808 (27th ed. 2000) ("Hepatitis C is the principal form of transfusion-induced hepatitis; a chronic active form often develops."); *The Merck Manual of Medical Information* 571 (Home ed. 1997) ("[Hepatitis C virus] is most commonly transmitted by injecting drug users who share needles."); Roscoe N. Gray, M.D. & Louise J. Gordy, M.D., LL.B., Attorneys' Textbook of Medicine ¶ 227.41, (Jo–Ann Shain ed., MB 3d ed. 2002) (hepatitis C is transmitted through blood).