Edward JAMES, Plaintiff–Appellant,

v.

William D. O'SULLIVAN, et al.,
Defendants–Appellees.

No. 01–2388.

United States Court of Appeals,
Seventh Circuit.

Submitted Feb. 18, 2003.*

Decided March 10, 2003.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Before POSNER, MANION, and WILLIAMS, Circuit Judges.

## ORDER

When the Illinois Department of Corrections transferred Edward James to its Western Correctional Center ("Western"), James refused to sign for his personal items, some of which were confiscated as contraband. He alleges that, as a result, he spent 49 days in segregation where he was denied soap, a toothbrush, toothpaste, and was subjected to filthy conditions such as a toilet that regularly backed up. James filed a grievance with his warden, but that was denied so he filed suit in the district court under 42 U.S.C. § 1983 alleging violations of his right to due process (by wrongfully being placed in segregation), and his right to be free from cruel and unusual punishment (by being denied personal hygiene items and cleaning supplies). The district court dismissed his suit in part because James failed to exhaust his administrative remedies, and in part because his allegations failed to state a claim. We affirm in part, vacate in part and remand for further proceedings.

According to his complaint, when James was transferred to Western, several of his personal items were confiscated, including his television, portable tape player, electric fan, and nail clippers. Although James had purchased these items at the commissary at the Dixon Correctional Facility, at Western they were considered contraband. James had been informed about the confiscation by a correctional officer, who told him to sign forms acknowledging receipt of his personal property and directing the prison to either have the confiscated property shipped, held for pickup, or destroyed. James refused to sign either form and so was placed in segregation.

In segregation, James alleges, he was not given the personal hygiene items inmates normally receive, including soap, a toothbrush, toothpaste, deodorant, a comb or fresh underwear. He alleges that he was also refused supplies to clean the toilet in his cell, which he says was caked with human waste and regularly backed up when inmates in neighboring cells flushed

their toilets. He says he asked several correctional officers for soap, toothpaste and cleaning supplies, but received none, though one officer did tell him that he had been denied any hygiene items because he had "pissed off" the officers in the property room when he refused to sign the forms acknowledging receipt of his personal property.

James eventually filed a grievance with the prison warden on August 29, 1999, complaining about his placement in segregation and the lack of hygiene and cleaning supplies, and requesting the return of his personal property and damages of $100 for each day spent in segregation. The warden denied the grievance on September 15, 1999; that same day, James was transferred to another prison. A couple months later, James appealed the warden's denial of his grievance by forwarding it to the Department of Corrections' administrative review board, which declined to act on the appeal.

James filed suit, alleging that his placement in segregation for refusing to sign for his personal property violated his right to due process, and the withholding of personal hygiene items and cleaning supplies violated his right to be free from cruel and unusual punishment. The district court dismissed James' complaint because he purportedly failed to appeal the warden's denial of his grievance and so did not exhaust his administrative remedies. *See Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir.2002). James sought reconsideration and tried to show that he had in fact filed an administrative appeal by attaching a copy of his November 1999 letter to the administrative review board (apparently James obtained a copy of this letter after filing his complaint).

The district court denied James' motion for reconsideration. It held that even though James had apparently appealed the warden's denial of his grievance, dismissal of his due process claim was still warranted because inmates have no liberty interest in staying out of segregation, and James therefore failed to state a due process claim. The court also held that dismissal of his cruel and unusual punishment claim was appropriate because James failed to include in his grievance any request for the items he alleges he was denied, such as soap, toothpaste, and cleaning supplies, and as a result did not exhaust his administrative remedies on that claim.

We review the district court's decision to dismiss James' complaint *de novo. White v. City of Markham,* 310 F.3d 989, 992 (7th Cir.2002). For the purpose of our review, we will accept as true his allegations and will affirm the dismissal only if it appears beyond doubt that James can prove no set of facts entitling him to relief. *Id.* Because James is proceeding pro se, we will construe his complaint liberally and subject it to less stringent scrutiny than a complaint prepared by counsel. *See Alvarado v. Litscher,* 267 F.3d 648, 651 (7th Cir.2001). James filed his notice of appeal in a timely fashion so as to challenge both the denial of his motion for reconsideration (which we construe under Federal Rule of Civil Procedure 59(e) because he filed it within ten days of the court's dismissal) and the underlying judgment itself. *See Edwards v. United States,* 266 F.3d 756, 757–58 (7th Cir.2001).

James argues that the district court reviewed his grievance too restrictively in concluding that he failed to exhaust his administrative remedies on his cruel and unusual punishment claim, *see* 42 U.S.C. § 1997e(a). In reaching this conclusion, the court had focused on the inadequacy of James' request for relief in his grievance. According to the court, James requested only the return of his property and money

damages for being placed in segregation, not that he be given hygiene items or cleaning supplies.

■ But unless a state has established a rule or regulation prescribing the contents of a grievance (which Illinois has not), the grievance "need not ... demand particular relief," and is adequate as long as it "object[s] intelligibly to some asserted shortcoming." *Strong v. David,* 297 F.3d 646, 650 (7th Cir.2002). The purpose of James' grievance here was readily apparent. It detailed the toiletries and other items he was denied: "I was never giv[en] my correspondence box with my toothpaste, soap.... Everybody got theirs in seg[regation] but me." He also vividly described the condition of his toilet, explaining, for instance, that "[waste] flushes from three other cells to my cell and it stinks." These allegations adequately identified and described the shortcomings James was complaining about, and that is all that need be set forth in his grievance. The district court therefore erred when it held that James' grievance was so inadequate as to render his administrative remedies unexhausted.

Our review of the court's dismissal of the cruel and unusual punishment claim does not end here, however, because that ruling could still be affirmed on another basis, including failure to state a claim. *Sonnleitner v. York,* 304 F.3d 704, 717 n. 8 (7th Cir.2002). To succeed on his Eighth Amendment claim, James will have to show that the prison's denial of hygiene and cleaning supplies constituted an objectively excessive risk to health and safety, and that prison officials were deliberately indifferent to the risk. *Boyce v. Moore,* 314 F.3d 884, 888 (7th Cir.2002).

■ Accepting James' allegations as true, as we must do when reviewing the court's dismissal, *White,* 310 F.3d at 992, we cannot conclude that he has failed to state a claim under the Eighth Amendment. Withholding soap, a toothbrush and toothpaste over an extended period of time–49 days in this case–may in some circumstances jeopardize basic levels of sanitation and hygiene. *Penrod v. Zavaras,* 94 F.3d 1399, 1406 (10th Cir.1996) (reversing grant of summary judgment for defendant where prisoner alleged that lack of toothpaste for two months caused his gums to bleed and recede and caused tooth decay that required treatment by a dentist); *Martin v. Sargent,* 780 F.2d 1334, 1337–38 (8th Cir.1985) (reversing dismissal of complaint where prisoner alleged that prison denied him personal hygiene items); *see also Wynn v. Southward,* 251 F.3d 588, 593 (7th Cir.2001) (reversing dismissal of complaint where prisoner alleged that prison misplaced his dentures, noting that "[d]ental care is one of the most important medical needs of inmates") (citation omitted). We cannot tell at this point whether James' health and safety were jeopardized–for instance, he did not allege that he suffered any physical injury like bleeding gums or rotting teeth (nor was he required to under notice pleading, *see Walker v. Benjamin,* 293 F.3d 1030, 1039 (7th Cir.2002)). At the same time, however, it is not beyond doubt that there is no evidence that James could submit proving that the prison jeopardized his health. *See White,* 310 F.3d at 992. Therefore, James' allegations about being denied soap, a toothbrush, and toothpaste, if true, may satisfy the objective component of the Eighth Amendment inquiry. The alleged denial of other items (a comb, deodorant, and cleaning supplies), however, cannot be said to have jeopardized his health, and therefore those allegations fail to state a viable claim under the objective component.

■ As for the subjective component of the Eighth Amendment inquiry, only those

defendants who knew that James was being denied soap and toothpaste could have been deliberately indifferent. *Boyce*, 314 F.3d at 888. According to James' allegations, some of the defendants did not know about his situation. For instance, adjustment review committee member Cassandra Wright and corrections officers J. Ervin, Davidson, Bradbury knew only that he was wrongfully placed in segregation, not that he was being denied personal hygiene items. Therefore, James cannot establish that these defendants were deliberately indifferent to his health and safety, and so dismissal of the claims against them was proper. *Id.*

■ On the other hand, James alleged that the remaining defendants—warden O'Sullivan, counselor S. Bell, and officers Lewis, Gille, and Rains—had either denied his requests for personal hygiene items or had reviewed and rejected his challenge to those denials. At this state it is not beyond doubt that James can prove no set of facts consistent with his complaint that would entitle him to relief from these defendants, and so the cruel and unusual claim against them should not have been dismissed.

■ James also argues that the district court improperly dismissed his due process claim that he was wrongfully placed in segregation because he refused to sign for his personal property. To establish a violation of due process, James must show that he was deprived a liberty interest. *Sandin v. Conner*, 515 U.S. 472, 484–85, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). But inmates have no liberty interest under the constitution to remain in the general population. *Id.* James' allegations that he was wrongfully placed in segregation, even if true, fail to establish that he was deprived a liberty interest, and therefore the district court properly dismissed this claim.

Accordingly, we AFFIRM the district court's dismissal of all claims against defendants Bradbury, Davidson, Ervin, and Wright, as well as James' due process claims against defendants Gille, Lewis, O'Sullivan and Rains; we VACATE the dismissal of James' cruel and unusual claims against defendants Gille, Lewis, O'Sullivan and Rains; and we REMAND the case for further proceedings.