David M. BURKS–BEY, Plaintiff,

v.

Sally STEVENSON, et al. Defendants.

No. 3:04–CV–0096 AS.

United States District Court,
N.D. Indiana,
South Bend Division.

July 12, 2004.

David M. Burks–Bey, Bunker Hill, IN, for Plaintiff.

## MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

David M. Burks–Bey, a *pro se* prisoner, submitted a complaint under 42 U.S.C. § 1983. Pursuant to FED. R. CIV. P. 15(a), Mr. Burks–Bey has also submitted an amended complaint. Pursuant to 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. FED. R. CIV. PRO. 12(b)(6) provides for the dismissal of a complaint, or any portion of a complaint, for failure to state a claim upon which relief can be granted. Therefore, the court will now screen Mr. Burks–Bey's amended complaint (docket # 8).

Courts apply the same standard under § 1915A as when addressing a motion under Rule 12(b)(6). *Weiss v. Cooley,* 230 F.3d 1027 (7th Cir.2000).

A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Allegations of a pro se complaint are held to less stringent standards than formal pleadings drafted by lawyers. Accordingly, pro se complaints are liberally construed.

In order to state a cause of action under 42 U.S.C. § 1983, the Supreme Court requires only two elements: First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of the right acted under color of state law. These elements may be put forth in a short and plain statement of the claim showing that the pleader is entitled to relief. FED. R. CIV. P. 8(a)(2). In reviewing the complaint on a motion to dismiss, no more is required from plain-tiff's allegations of intent than what would satisfy Rule 8's notice pleading minimum and Rule 9(b)'s requirement that motive and intent be pleaded generally.

*Alvarado v. Litscher,* 267 F.3d 648, 651 (7th Cir.2001) (citations, quotation marks and ellipsis omitted).

■■■■ Mr. Burks–Bey brings claims alleging that he has been denied the opportunity to practice his religion. Mr. Burks–Bey alleges that he is a member of the Moorish Science Temple of America (MSTA). Under the First Amendment, prisoners "retain the right to practice their religion to the extent that such practice is compatible with the legitimate penological demands of the state." *Al–Alamin v. Gramley,* 926 F.2d 680, 686 (7th Cir.1991). A prison regulation or policy that might otherwise unconstitutionally impinge on an inmate's First Amendment rights will survive a challenge if it is reasonably related to legitimate penological interests. *See Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) and *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 353, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987). "The 'free' exercise of religion thus is rather a misnomer in the prison setting." *Johnson–Bey v. Lane,* 863 F.2d 1308, 1310 (7th Cir.1988). "[T]he prison is entitled to curtail these rights to the extent necessary to protect security." *Johnson–Bey v. Lane,* 863 F.2d 1308, 1310 (1988).

There are two fundamental flaws with Mr. Burks–Bey's complaint. First, it appears that he believes that he can use his religious beliefs to dictate to prison officials how he will be housed and treated. This he cannot do. The language of the complaint creates the impression that Mr. Burks–Bey uses his religion as a weapon more than as a sincere devotion of worship.

Evidence of nonobservance is relevant on the question of sincerity, and it especially important in the prison setting, for an inmate may adopt a religion merely to harass the prison staff with demands to accommodate his new faith.

*Reed v. Faulkner*, 842 F.2d 960, 963 (7th Cir.1988). Furthermore, this court is very cognizant of the admonition that:

Prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.

*Whitley v. Albers*, 475 U.S. 312, 321–322, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (citations, ellipsis, and quotation marks omitted). Second, unlike the plaintiff in *Reed v. Faulkner*, 842 F.2d 960, 963 (7th Cir. 1988), Mr. Burks–Bey appears to believe that he, personally and individually, can invent religious practices without any regard for the historical or theological traditions of MSTA and even without regard to consistency of belief from one claim to the next. This he cannot do. Used in tandem, these two techniques allow Mr. Burks–Bey to weave a complaint in which seeks to have this court restrict the prison's ability, "to preserve internal order and discipline and to maintain institutional security." *Whitley*, at 322, 106 S.Ct. 1078. This it will not do.

### I. Communal Worship

■ In paragraphs 1–10, 34–39, 51–52, 74–76, and 89–90, Mr. Burks–Bey alleges that he has been denied the opportunity for communal worship and study on several state holidays: (1) the day after Thanksgiving, November 29, 2002; (2) Good Friday, April 18, 2003; (3) Independence Day, July 4, 2003; (4) Election Day, November 4, 2003; (5) and, the day after Thanksgiving, November 28, 2003. By gubernatorial executive order, the day after Thanksgiving is a state holiday which is celebrated in lieu of celebrating Lincoln's Birthday on February 12th. *See* IND. CODE § 1–1–9–2.

Mr. Burks–Bey alleges that Good Friday and Thanksgiving are Christian holidays and that he does not celebrate Christian holidays. First the court notes that the animosity expressed by Mr. Burks–Bey toward Christian holidays is inconsistent with other statements made by him in this complaint. For example, Mr. Burks–Bey argues, "that his religion commands that he honors all of the true Divine Prophets (e.g. Buddha, Confucius, Mohammad, and Jesus) which requires his attendance at the worship/study services of these Religious Programs." (Complaint at ¶ 17) Without regard to the legitimacy of this claim (which will be addressed later in this memorandum) it is clearly inconsistent to profess to honor Jesus and insist on attendance at Christian worship and study while simultaneously disparaging Christian holidays and refusing to participate in their celebration.

Nevertheless, even if the arguments were consistent with Mr. Burks–Bey's stated religious beliefs, it is inconsistent with the facts and the law. Without regard to whether a holiday is also a religious holiday, it may nevertheless be a secular holiday. *See Bridenbaugh v. O'Bannon*, 185 F.3d 796 (7th Cir.1999) (Holding that Good Friday, and finding that Thanksgiving, are secular holidays). As discussed in *Bridenbaugh*, holidays provide employees time off from work. Herein is the obvious, legitimate, penological justification for cancelling communal worship and study on these state holidays. When a prison is short staffed, it curtails programing. Though Mr. Burks–Bey dislikes this, it is not for him, as a prisoner, to dictate to prison officials how to staff and program the prison on state holidays.

In paragraphs 49 and 50, Mr. Burks–Bey alleges that no legitimate reason was

provided to him for why his communal worship was cancelled on June 13, 2003. It is important to note here that prison officials have no Constitutional obligation to provide Mr. Burks–Bey with any explanation for any of their actions on any occasion. Mr. Burks–Bey is an inmate. Despite his clear misunderstanding on this point, he may not command prison officials to answer to him. Nevertheless Mr. Burks–Bey provides the documentation to demonstrate that he was provided with the explanation that the cancellation was caused due to an oversight in processing the necessary paperwork for that one day. Such an error is not a Constitutional violation.

In paragraphs 21–24, Mr. Burks–Bey alleges that the MSTA religious worship service was cancelled on February 14, 2003. The exhibits attached to the complaint show that the chaplain was sick. Mr. Burks–Bey vehemently grieved that this was not a good reason to cancel services and that the prison should have somehow reorganized its staff. He argues that because they did not, he was denied the "right to worship his God on Feb. 14, 2003." Complaint at ¶ 22, docket # 8. First, the absence of a chaplain due to sickness is a legitimate penological reason for cancelling the MSTA service and doing so did not violate the Constitution. Furthermore, the cancellation of services did not deny Mr. Burks–Bey the right to worship his God. MSTA does not require the intercession of a priest and its adherents pray directly to Allah. *See* The Holy Koran of The Moorish Science Temple of America, divinely prepared by the Noble Prophet Drew Ali, Chapter 10, # 22–24.

■ In paragraphs 17–20, Mr. Burks–Bey alleges that he was denied attendance at the communal worship and study of Buddhism, Confucianism, Islam, Christianity, and the Nation of Islam. On February 14, 2003, he asked to be put on the count

letter for religions other than MSTA, but he says that he was denied. He alleges that as a member of MSTA he must honor all of the divine prophets and teachings. As previously noted, Mr. Burks–Bey's complaint projects more antagonism than honor toward other religions. Nevertheless, even if honoring all divine prophets and teachings is required by MSTA (an issue that need not be decided here), attending the worship and study services of all other religions is not. Any honoring and studying of divine prophets that is required of MSTA members can adequately be accomplished either individually or during the time allotted for MSTA group worship and study. Additionally, there are obvious legitimate internal institutional security issues, not to mention scheduling ones, related to allowing inmates to attend the services of all religions. Restricting Mr. Burks–Bey to MSTA services was not a Constitutional violation.

■ In paragraphs 44–48, Mr. Burks–Bey alleges that he was forced to choose between eating lunch two days a week "or attending Moslem/Muslim religious worship/study services ...." Complaint at ¶ 44, docket # 8. Mr. Burks–Bey is a member of MSTA. Since it is not a Constitutional violation to deny him attendance at religious services of other groups (including those of Moslems/Muslims), clearly it was not a Constitutional violation to permit him to attend if he choose to skip lunch.

■ In paragraphs 23–24, 29, 39, 59, 77–79, 82, 87, 91, and 103–105, Mr. Burks–Bey alleges that prison policy required that prison officials provide an outside representative to supervise MSTA services rather than cancel them. The violation of a prison policy does not state a claim under § 1983. *See Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir.2001). Furthermore, prison officials did not vio-

late the Constitution when they cancelled MSTA programming which lacked an outside representative because the "presence of [a] free-world sponsor at group religious meetings [has been] upheld as [a] legitimate security measure". *Hadi v. Horn*, 830 F.2d 779, 785 (7th Cir.1987) *citing Tisdale v. Dobbs*, 807 F.2d 734, 738–39 (8th Cir.1986). The essence of Mr. Burks–Bey's confusion on this issue is that he believes that the Constitution requires prison officials to succeed in getting a free world sponsor; it does not. Here it is clear from the complaint and attached exhibits that prison officials have tried, to obtain a free-world sponsor, but that Mr. Burks–Bey has continually refused to acknowledge that he has any role to play in this process, even though he has been invited to do so. While it is true that he has no obligation to assist in obtaining a free-world sponsor, neither does he have a cause of action against prison officials who try, albeit unsuccessfully, to obtain a sponsor. *See Johnson–Bey v. Lane*, 863 F.2d 1308 (7th Cir.1988). That is to say, if Mr. Burks–Bey wants to have MSTA communal worship, then he could help to find and retain a free-world sponsor, but he will not be heard to complain that he is being denied the right to practice his religion in communal worship where he refuses to cooperate with prison officials who are trying to assist him. Indeed, the facts of this case, as alleged by Mr. Burks–Bey, show that they have provided him with much more than is Constitutionally required. They have, on occasion, allowed him to attend the worship services of other religions and they have allowed MSTA communal worship without a free-world sponsor even though they were not Constitutionally required to do either.

## II. Religious Items, Practices and Pastoral Care

■ In paragraphs 11–16, Mr. Burks–Bey alleges that he has been denied the right to purchase "Moslem Prayer Oils" (complaint at ¶ 11, docket # 8). There is an important distinction between the fundamental beliefs of a religion and the cultural practices surrounding the practice of that religion. Here, the court knows of no competent authority for Mr. Burks–Bey's individual assertion that the use of prayer oils is a fundamental belief of MSTA, though some members, like Mr. Burks–Bey, may well entertain a cultural affinity for their use. The Holy Koran of The Moorish Science Temple of America, divinely prepared by the Noble Prophet Drew Ali, does not refer to prayer oils. Neither is there any mention of prayer oils in The Divine Constitution and By–Laws. Though Mr. Burks–Bey might enjoy using prayer oils, because their use is not a fundamental belief of MSTA, the prison has no obligation to accommodate this demand. Even if prayer oils are fundamental to Islam, even if kippot are fundamental to Judaism, even if holy water is fundamental to Catholicism, none of these items are fundamental to MSTA. Mr. Burks–Bey complains that Sunni Muslim's are permitted to purchase "Muslim Prayer Oils" (complaint at ¶ 13, docket # 8), but in yet another inconsistency, this argument does not seem to recognize that he is not a Sunni Muslim. Here, unlike the plaintiff in *Reed v. Faulkner*, 842 F.2d 960 (7th Cir.1988), the question is not whether Mr. Burks–Bey sincerely believes and practices his belief in the religion of MSTA (though such questions might reasonably be raised) here the issue is what are the beliefs of MSTA and what does it require of its adherents. As a member of MSTA, prayer oil is at best an optional item which is not essential to the practice of the MSTA religion. Mr. Burks–Bey, like all other MSTA members, was no less able or effective in the worshiping of his god without prayer oil than he would have been had he had it.

■ In paragraphs 25–27, Mr. Burks–Bey alleges that the prison has refused to obtain and provide "fundamental literature (Korans, By–Laws, Questionnaires, Nationality Cards, Oral Statements by the Prophet, Flags, Fezzes, etc.) essential to worship and study plaintiffs religion" (complaint at ¶ 25, docket # 8). The attached exhibits demonstrate that the prison has not refused to obtain these products. Rather the prison has attempted to obtain the items but has been delayed due to difficulties in locating a vendor who complies with uniform state procurement policies. This is not a refusal to permit Mr. Burks–Bey to practice his religion, it is a legitimate institutional concern related to procurement and accounting standards. If Mr. Burks–Bey were more interested in obtaining study materials than in fighting with prison officials, he could attempt to assist with the process of locating a qualified vendor, even though he has no obligation to do so.

■ In paragraphs 28–31, 40–43, Mr. Burks–Bey alleges that he was denied spiritual and pastoral care prior to July 29, 2003. (Claims related to the denial of spiritual and pastoral care after July 29, 2003 are addressed in part IV.) The attached exhibits demonstrate that Mr. Burks–Bey was not refused spiritual and pastoral care, rather prison officials were unable to obtain a credentialed MSTA leader from the national leaders of MSTA. As for Mr. Burks–Bey's claim that he was unable to meet with Chaplain Babb upon request even when the chaplain was in his office, Mr. Burks–Bey has no right to dictate the time and place of meeting with the chaplain. Based on the attached prison grievances, there is no inference that Mr. Burks–Bey was seeking to meet with the chaplain for personal pastoral care, rather his demands were grounded in his desire to prosecute his ongoing administrative complaints including having Chaplain Babb disciplined. Mr. Burks–Bey was not seeking to meet with Chaplain Babb for spiritual conciliation, rather he was seeking an administrative remedy. Thus it was not pastoral care that he was being denied, but rather a grievance hearing. Given the repetitive and argumentative tone of many of Mr. Burks–Bey's prison grievances, as well as his unwillingness to accept reasonable, legitimate responses, there is no doubt that even a chaplain would be reticent to meet with Mr. Burks–Bey to discuss them. A prison is not required to provide a grievance procedure and even a chaplain is not Constitutionally required to provide a grievance hearing. *See Jones v. Brown,* 300 F.Supp. 2nd 674, 679 (N.D.Ind.2003) ("[T]he First Amendment right to petition the government for a redress of grievances protects a person's right to complain to the government that the government has wronged him, but it does not require that a government official respond to the grievance.")

■ In paragraphs 67–73 and 83–85, Mr. Burks–Bey alleges that he was denied the ability to participate in Ramadan. Ramadan is a Islamic holiday. Mr. Burks–Bey is a member of MSTA. Despite the inconsistency of his vehement complaints about celebrating holidays associated with other divine prophets, Mr. Burks–Bey wants to insist that be accommodated to celebrate this one. Nevertheless, just as he has no Constitutional right to attend the worship and study of other religions, so to he has no Constitutional right to demand that he be accommodated to celebrate the holidays of other religions. Mr. Burks–Bey attempts to assert the rights of others and argues that Sunni Muslims are allowed to celebrate Ramadan. First, he cannot assert the rights of any other inmate because he lacks standing to do so. "[S]tanding encompasses the general prohibition on a litigant's raising another person's legal rights . . . ." *Elk Grove Unified*

*School District v. Newdow,* —— U.S. ——, ——, 124 S.Ct. 2301, 2309, 159 L.Ed.2d 98 (2004) (quotation mark omitted). Second, he is not a Sunni Muslim.

 In paragraphs 119–125, Mr. Burks–Bey alleges that he is denied the opportunity to celebrate Moorish Independence Day on July 20th of each year. Mr. Burks–Bey does not allege what it is that he wants to do on July 20th and therefore there is no indication as to how he thinks he is being denied the ability to celebrate. He asserts that this celebration is commanded by the Moorish Science Temple of America Divine Constitution and By-Laws. A review of that document discloses that it makes no mention of either July 20th or Moorish Independence Day. Inconsistently, Mr. Burks–Bey argues that he is a citizen of the United States while asserting that Moorish Independence Day is the celebration of the independence of the Moors from America. Act 4 of the Divine Constitution and Bylaws states that "by being a Moorish American, you are a part and partial [sic] of the government . . . ." Act 5 states, "This organization of the Moorish Science Temple of America is not to cause any confusion or to overthrow the laws and constitution of the said government but to obey hereby." Nothing in these statements or in the balance of the document gives any support to Mr. Burks–Bey's assertion of Independence from America or of a religious obligation to celebrate it on July 20th. This is not a question, as in *Reed v. Faulkner,* 842 F.2d 960 (7th Cir.1988), of whether Mr. Burks–Bey sincerely believes and practices MSTA, rather this is a question of Mr. Burks–Bey personally and individually inventing religious practices and holidays and then ascribing them to MSTA without any regard for the historical, theological, or logical consistency of the traditions of that religion.

### III. Equal Protection

 In paragraphs 32–33, Mr. Burks–Bey alleges that Sally Stevenson cancels MSTA programs for reasons which have not resulted in the cancellation of the programing of other similarly situated religious groups. This states an equal protection claim under the Fourteenth Amendment. Though Mr. Burks–Bey also mentions the First Amendment, the Fourteenth Amendment fully encompasses this claim. The Fourteenth Amendment requires that the religious rights of inmates belonging to minority or non-traditional sects be respected to the same degree as the rights of those belonging to larger and more traditional denominations.

> Within these constraints (compatibility with the legitimate penological demands of the state) the prison must afford all inmates a reasonable opportunity to practice their religion. In providing this opportunity, the efforts of prison administrators, when assessed in their totality, must be evenhanded. Prisons cannot discriminate against a particular religion. The rights of inmates belonging to minority or non-traditional religions must be respected to the same degree as the rights of those belonging to larger and more traditional denominations. Of course, economic and, at times, security constraints may require that the needs of inmates adhering to one faith be accommodated differently from those adhering to another. Nevertheless, the treatment of all inmates must be qualitatively comparable.

*Al–Alamin v. Gramley,* 926 F.2d 680, 686 (7th Cir.1991) (citations omitted).

 In paragraphs 114–118, Mr. Burks–Bey alleges that he was searched because he is a Muslim/Moslem. The exhibits demonstrate that the officer conducting the search shook-down everyone leaving the Islamic service on September

13, 2003. This was a search of inmates at a particular time and place, not a search of all persons of a particular religious belief. Based on the allegations and exhibits provided by Mr. Burks–Bey, non-Muslim's, even MSTA members like himself, were searched. Furthermore, there is no indication that Muslims who were not present at that time and place were located in other places so that they could also be searched. In prison, inmates may get shaken down at any time and place, even after a worship service. This search clearly did not single out Muslims since it was both over and under inclusive of that group. Mr. Burks–Bey cannot dictate to prison officials when he can be searched and he cannot use the religious beliefs of others or his attendance at others' religious services to shield him from being searched.

### IV. Retaliation

Prison officials may not retaliate against an inmate for exercising his First Amendment rights, even if their actions would not independently violate the Constitution. *See Zimmerman v. Tribble,* 226 F.3d 568, 573 (7th Cir.2000). To state a claim for retaliation, the complaint must first allege that the plaintiff was engaged in a Constitutionally protected activity and second, that engaging in that activity was a substantial or motivating factor in the defendant's actions against him. *Mt. Healthy City School District v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Nevertheless, a claim for retaliation cannot prevail if the defendant can demonstrate that the same decision would have been made even without any consideration of the protected activity. *Mt. Healthy City School District v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Therefore to prevail in a retaliation case, the plaintiff must ultimately demonstrate that engaging in the protected activity was ultimately the motivating

factor in the defendant's actions against him.

In paragraphs 53–60, Mr. Burks–Bey alleges that in response to having filed a grievance on July 8, 2003, that he was retaliated against when more than 70 other inmates were removed from the count letter and thereby denied attendance at MSTA services thereby preventing him from uplifting fallen humanity as required by MSTA. First, Mr. Burks–Bey cannot assert the rights of any other inmate because he lacks standing to do so. *See Elk Grove Unified School District v. Newdow,* —— U.S. ——, ——, 124 S.Ct. 2301, 2309, 159 L.Ed.2d 98 (2004). Second, Mr. Burks–Bey does not allege, and based on this complaint it would not be reasonable to infer, that those 70 other inmates whose fallen humanity he desired to uplift were interested in being included on that count letter. Third, removing other inmates' names from the count letter did not prevent Mr. Burks–Bey from uplifting their fallen humanity because he retained the opportunity to speak with them about his religion during other times, so long as he remained in general population. Finally, these facts do not state a claim of retaliation because removing other inmates from the count letter was not an action taken against him, but rather against them.

In paragraphs 61–66 Mr. Burks–Bey also alleges that Chaplain Babb retaliated against him by ordering that no chaplain provide MSTA members with any spiritual care. Again, Mr. Burks–Bey may not assert the rights of others, but he may assert his own rights. If as a result of Chaplain Babb's order, he is being denied all spiritual and pastoral care, this states a claim without regard to whether the issuance of the order was motivated by retaliation. If Mr. Burks–Bey was not denied all spiritual and pastoral care, then he has suffered no injury and the claim for retali-

ation does not state a claim because it is mere verbal abuse and harassment. *See DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir.2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws.") Though Mr. Burks–Bey may be entitled to some form and level of pastoral care, he is not entitled to demand that it be provided by a specific chaplain or at a specific time and place. Therefore the retaliation claim will be dismissed, but he will be allowed to proceed on his claim that Chaplain Babb denied him all spiritual and pastoral care from any source beginning on July 29, 2003.

 In paragraphs 92 and 96–105, Mr. Burks–Bey alleges that various MSTA programs were cancelled "at least in part" because he filed a grievance or this lawsuit. These allegations are insufficient to support a claim for retaliation. Even when this complaint is broadly construed, it must nevertheless be read in its totality. When taken as a whole, the court is unconvinced that the phrase, "at least in part", is merely inartfully drafted. Rather, when read as a whole, this complaint acknowledges that Mr. Burks–Bey understands that other reasons (whether legitimate or illegitimate) were the basis for the cancellation of these programs. Cancellations for legitimate reasons do not state a claim even if the person cancelling the programming is also frustrated by Mr. Burks–Bey's persistent contentiousness. Cancellations for illegitimate reasons state an independent claim.

### V. Other Claims

 In paragraphs 7 and 8, Mr. Burks–Bey alleges that he was lied to in response to a grievance. In paragraphs 19, 93–95, and 106–111, he alleges that he did not receive a response to his grievances or that he did not like the response he did receive. There is no Constitutional obligation for a prison to have a grievance procedure and being lied to does not state a claim for the violation of a Constitutional right. *See Jones v. Brown*, 300 F.Supp.2d 674, 679 (N.D.Ind.2003). Furthermore, the documents attached by Mr. Burks–Bey demonstrate that he is misstating the record in regard to whether he was lied to. He alleges that he was lied to when he was informed that Brother Tinnin–Bey was not at the prison on November 29th, but as he noted in his attached grievance response, he was not informed that Brother Tinnin–Bey was absent on November 29th, but rather he was absent on November 20th. He also alleges that he was informed that there is no such person as Brother Tinnin–Bey. The prison response stated that, "There is no such person as S.A. Tinnin–Bey listed in the MCF DOC files." Docket # 8 at Exhibit 1. This was not a denial of the existence of Brother Tinnin–Bey. Mr. Burks–Bey was seeking a staff statement, but, as the exhibits make clear, Brother Tinnin–Bey was not an MCF staff member. Finally, Mr. Burks–Bey did receive a response to his grievance filed February 14, 2003. He attaches a copy of that grievance wherein he was told that the grievance was rejected because he included multiple issues on the same form. Though that response may not have satisfied him, it was a response.

 In paragraphs 59, 77–82, and 86–88, Mr. Burks–Bey alleges that he was threatened by some of the responses he received to his grievances. Verbal abuse and harassment are not sufficient to state a claim under § 1983. *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir.2000).

In paragraphs 112–113, Mr. Burks–Bey alleges that insufficient monies have been deducted from his inmate trust account in payment of the filing fees in this case. It

is rare that an inmate complains that he is not paying enough toward his filing fee obligations. Though this does not state a claim against any of the defendants, if Mr. Burks–Bey believes that he has remitted too little money to the clerk of this court, he is obligated by this court's order of February 3, 2004 to promptly remit the· proper amount required by that order.

### VI. Conclusion

Mr. Burks–Bey's numerous claims have been reduced to two. First that Sally Stevenson canceled MSTA programs for reasons that did not result in the cancellation of the programing of other religious groups. Second that Chaplin William Babb denied him any spiritual or pastoral care since July 29, 2003. All other claims are being dismissed.

To prevail on his first surviving claim for monetary damages, Mr. Burks–Bey will have to prove that Sally Stevenson, personally cancelled MSTA programing for some reason for which she did not cancel the programing of some other religious group. Merely proving that economic or security concerns resulted in different accommodations for the two groups is insufficient, Mr. Burks–Bey must prove that the MSTA's treatment was not qualitatively comparable to that of the other religious group. *See Al–Alamin v. Gramley,* 926 F.2d 680, 686 (7th Cir.1991) and *Reed v. Faulkner,* 842 F.2d 960 (7th Cir.1988).

To prevail on his second surviving claim for monetary damages, Mr. Burks–Bey will have to prove both that Chaplin William Babb ordered that he be denied any spiritual or pastoral care and that he did not receive any such care after July 29, 2003. If spiritual and pastoral care have since been restored, he will have to prove that the deprivation lasted long enough to be more than *de minimis* (e.g. significantly longer than the routine or normal duration of time between pastoral services received by other inmates.)

Mr. Burks–Bey also seeks injunctive relief. The second surviving claim obviously seeks that prison officials provide him with at least the Constitutionally required minimum quantum of spiritual and pastoral care. Of course, if spiritual and pastoral care have since been restored, then this claim is moot.

The remedy for the first surviving claim is not so self-evident. Mr. Burks–Bey's demand for relief that MSTA programs not be cancelled in the future is not the necessary remedy for an equal protection violation. The Constitution establishes minimum standards for an inmate's communal worship, but those requirements are not at issue in this case; the complaint's First Amendment claims based on the denial of communal worship are being dismissed. The surviving claim is based on the Fourteenth Amendment's equal protection clause which requires that all religious groups be treated similarly. This requirement is met when all religious services are cancelled or rescheduled for the same Constitutionally legitimate economic and security concerns such that the treatment of all religious groups is qualitatively comparable. Thus, rather than resulting in significantly enhanced programing for MSTA, such an injunction might merely result in the diminution of the programing, to Constitutional minimums, for other religious groups.

The circuit court in *Johnson–Bey v. Lane,* 863 F.2d 1308, 1310 (7th Cir.1988) lamented that it lacked the equitable discretion to, "suspend the lawsuit and ask the parties to report back to us in six months concerning their progress in working out mutually acceptable arrangements to secure the Moorish inmates' religious rights without compromising the prison's security." The court went on to state that,

"[t]here seems little doubt that such arrangements are feasible and indeed they may already be well in train." This court shares these sentiments, and the equitable and scheduling authority of a district court are not as limited as that of the circuit. Here, all parties should consider how they wish to proceed with this lawsuit and present their ideas when they prepare their status reports in preparation of this court's issuance of a scheduling order.

For the foregoing reasons, the court:

(1) **GRANTS** the plaintiff leave to proceed against Sally Stevenson in her individual capacity for compensatory and punitive damages, and in her official capacity for injunctive relief, on his Fourteenth Amendment equal protection claim in paragraphs 32 and 33 for cancelling MSTA programs for reasons which do not result in the cancellation of the programing of other religious groups;

(2) **GRANTS** the plaintiff leave to proceed against Chaplin William C. Babb, III, in his individual capacity for compensatory and punitive damages, and in his official capacity for injunctive relief, on his First Amendment free exercise claim in paragraphs 61–66 for denying him any spiritual or pastoral care beginning July 29, 2003;

(3) **DISMISSES** all other claims;

(4) **DIRECTS** the clerk to ensure that a copy of this order is served on Sally Stevenson and Chaplin William C. Babb, III, along with the summons and complaint;

(5) **DIRECTS** the United States Marshals Service to effect service of process on Sally Stevenson and Chaplin William C. Babb, III; and

(6) **ORDERS**, pursuant to 42 U.S.C. § 1997e(g)(2), that Sally Stevenson and Chaplin William C. Babb, III, respond, as provided for in the Federal Rules of Civil Procedure and N.D. IND. L.R. 10.1, only to the two claims for which this *pro se* plaintiff has been granted leave to proceed in this screening order.

**IT IS SO ORDERED.**